**In re SOUTHWESTERN BELL
TELEPHONE COMPANY,
L.P., Relator.**

No. 05–0951.

Supreme Court of Texas.

Argued Jan. 24, 2007.

Decided Aug. 31, 2007.

Philip J. John Jr., Baker & Botts L.L.P., Houston, TX, Shira R. Yoshor, Baker & Botts, Dallas, TX, Mitchell C. Chaney, Rodriguez Colvin & Chaney, Brownsville, TX, Maureen Flaherty McNiece, Southwestern Bell Telephone L.P., San Antonio, TX, Mike A. Hatchell, Charles R. Watson Jr., Locke Liddell & Sapp LLP, Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, Neil E. Norquest, Rodriguez, Colvin,

Chaney & Saenz, L.L.P., Edinburg, TX, Chris A. Brisack, Norquest & Brisack, L.L.P., McAllen, TX, for Relator.

Ramon Garcia, Law Offices of Ramon Garcia, P.C., Edinburg, TX, Joseph Michael Gourrier, The Gourrier Law Firm, Houston, TX, John R. Griffith, Roy Jesse Elizondo III, Griffith & Garza, LLP, McAllen, TX, for Real Party in Interest.

Don R. Richards, Richards & Elder L.L.P., Lubbock, TX, Brook Bennett Brown, McGinnis, Lochridge & Kilgore, L.L.P., Elizabeth R.B. Sterling, Office of the Attorney General, Austin, TX, for Amicus Curiae.

Chief Justice JEFFERSON delivered the opinion of the Court.

In this original proceeding, we must decide whether the Public Utilities Commission (PUC) has exclusive jurisdiction over claims that Southwestern Bell Telephone (SWBT)[1] improperly collected the Texas Universal Service Fund (TUSF) surcharge from customers. We conclude that the PUC has exclusive jurisdiction and conditionally grant relief.

## I

### Background

This dispute involves the interplay of several facets of telecommunications regulation: universal service, switched access rates, incentive regulation, and the Texas Universal Service Fund surcharge.

### A

### Universal Service

Universal service—that is, "adequate and efficient telecommunications service"

---

1. SWBT notes that the style incorrectly uses the name "Southwestern Bell Telephone Company, L.P.," as its correct name is "Southwestern Bell Telephone, L.P." Because the parties and lower courts retained the original style, we retain that style but refer to SWBT by its correct name in our opinion.

available to all citizens at "just, fair, and reasonable rates"—has long been a policy objective of our state and national governments. TEX. UTIL.CODE § 52.001(a); *see also* 47 U.S.C. § 151 (2000); *AT & T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 521–22 n. 18 (Tex. 2006). Achieving this goal requires subsidization of rural and residential service that would otherwise be prohibitively expensive. *AT & T*, 186 S.W.3d at 521. In the past, switched access rates—rates paid by long-distance carriers to local carriers so that long-distance customers could access local networks—were used to subsidize universal service. Pub. Util. Comm'n of Tex., *Scope of Competition in Telecommunications Markets of Texas* at 82 (Jan. 1999). These rates were priced higher than their cost, in part so that local carriers could recoup the expense of providing service in high-cost rural areas of the state. *Id.*

## B

### Incentive Regulation

This system changed, however, in 1995 when the Legislature's amendments to PURA introduced incentive regulation.[2] *See* Act of May 16, 1995, 74th Leg., R.S., ch. 231, § 49, 1995 Tex. Gen. Laws 2017, 2045–53 (current version at TEX. UTIL.CODE ch. 58). These amendments permitted local carriers to opt out of the traditional regulatory framework if they agreed to cap rates for basic services, including switched access rates, at 1995 levels for four years. TEX. UTIL.CODE §§ 58.021, 58.051, 58.054; *AT & T*, 186 S.W.3d at 522–23. In exchange, the carrier could not, "under any circumstances, [be] subject to a complaint, hearing, or determination regarding the reasonableness of the com-

pany's: (1) rates; (2) overall revenues; (3) return on invested capital; or (4) net income." TEX. UTIL.CODE § 58.025(a); *see* Act of May 16, 1995, 74th Leg., R.S., ch. 231, § 49, 1995 Tex. Gen. Laws 2017, 2046, formerly TEX.REV.CIV. STAT. art. 1446c-0, § 3.352(d), recodified by Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 1, 1997 Tex. Gen. Laws 713, 864. Because switched access rates were capped, the funds available to subsidize universal service could not increase and, due to competitive pressures, might decrease. *AT & T*, 186 S.W.3d at 521–22. SWBT elected incentive regulation.

## C

### TUSF Surcharge

Partially in response to the effects of incentive regulation, the Legislature substantially amended the universal service subchapter of PURA in 1997, *see* Act of May 8, 1997, 75th Leg., R.S., ch. 166 § 1, 1997 Tex. Gen. Laws 850, directing the PUC to "adopt and enforce rules . . . to establish a universal service fund" that is "funded by a statewide uniform charge payable by each telecommunications provider that has access to the customer base." TEX. UTIL.CODE §§ 56.021, 56.022(a). The PUC promulgated a rule allowing providers to recover their portion of the TUSF from retail customers via a "Texas Universal Service" surcharge, assessed as a percentage of the customer's bill, excluding Lifeline and Link Up services. 16 TEX. ADMIN. CODE § 26.420(f)(6). The TUSF plan includes programs that, in conjunction with the Federal Universal Service Fund, assist telecommunications providers in providing basic local services at reasonable rates in high cost rural ar-

---

**2.** The 1995 PURA amendments and the federal Telecommunications Act of 1996 opened local exchange service to competition. *AT &*

*T*, 186 S.W.3d at 522. Incentive regulation was intended to facilitate this transition. *Id.*

eas. Pub. Util. Comm'n of Tex., *Scope of Competition in Telecommunications Markets of Texas* at 41 (Jan.2007). The PUC approved SWBT's application to add the TUSF surcharge, and SWBT has been collecting it since 1999.

## D

### Procedural History

Plaintiffs Debbie Clara Trevino, Arnoldo Benavides, and Annette Muniz, individually and as representatives of a putative class consisting of all SWBT residential customers in Texas, sued SWBT in Hidalgo County district court. Plaintiffs alleged that SWBT's electing incentive regulation under chapter 58 of the Public Utility Regulatory Act (PURA) violated that chapter's rate cap provisions because it also collected the TUSF under chapter 56. Specifically, plaintiffs alleged:

> By applying the [TUSF] charge to the total bills of its residential customers, SWBT effectively increases the rate charged for many of the basic network services listed in TEX. UTIL.CODE § 58.051(a). Since it was not a rate charged for basic network services on June 1, 1995, Plaintiffs allege SWBT's [TUSF] charge violates SWBT's rate freeze agreement under the incentive regulation found in Chapter 58 of the PURA. Plaintiffs allege that SWBT's billing of its [TUSF] charge for basic network services has resulted and continues to result in monthly overcharges to SWBT's residential customers. Plaintiffs are not challenging the reasonableness of SWBT's rates. Plaintiffs are challenging the legality of SWBT's [TUSF] charge for basic network ser-

vices, in light of its rate freeze agreement under TEX. UTIL.CODE § 58.021.

Plaintiffs sought a declaration that SWBT's TUSF charge was a rate charged for basic network services and that SWBT increased that rate in violation of its rate freeze agreement, as well as an order requiring SWBT to refund the [TUSF] to its customers[3] (the "core claims"). Plaintiffs also requested attorney's fees. SWBT filed a plea to the jurisdiction, arguing that the PUC had exclusive jurisdiction over the core claims, and the trial court denied it. The court of appeals denied mandamus relief, 235 S.W.3d 811, and SWBT now seeks a writ of mandamus from this Court.[4]

## II

### Analysis

### A

### Mandamus

■ Initially, we address whether mandamus is appropriate. Mandamus relief is an extraordinary remedy that issues only if the court clearly abused its discretion and the relator has no adequate remedy by appeal. *In re Entergy Corp.*, 142 S.W.3d 316, 320 (Tex.2004). We recently addressed whether mandamus should lie to correct a trial court's denial of a plea to the jurisdiction based on an agency's exclusive jurisdiction and concluded that:

> if the PUC has exclusive jurisdiction in this dispute, the judicial appropriation of state agency authority would be a clear disruption of the 'orderly processes of government.' This disruption, coupled with the hardship imposed on [the relator] by a postponed appellate review,

---

**3.** The refund allegations were pleaded both as a request for injunctive relief as well as an unjust enrichment claim.

**4.** The Public Utility Commission, Texas Statewide Telephone Cooperative, Inc., and The Texas Telephone Association submitted amicus briefs in support of SWBT's petition for writ of mandamus.

warrants an exception to our general proscription against using mandamus to correct incidental trial court rulings.

*Id.* at 321 (quoting *State v. Sewell,* 487 S.W.2d 716, 719 (Tex.1972)). That analysis applies here. Allowing the trial court to proceed if the PUC has exclusive jurisdiction would disrupt the orderly processes of government. That, coupled with the hardship occasioned by postponed appellate review, makes mandamus an appropriate remedy.[5]

■ Plaintiffs argue that SWBT's petition for writ of mandamus is untimely · because SWBT did not file its mandamus petition with this Court until more than a year after the court of appeals denied relief. Plaintiffs rely on *Rivercenter Associates v. Rivera,* 858 S.W.2d 366, 367–68 (Tex.1993), in which we denied mandamus relief to a party who waited over four months to file a mandamus petition. We concluded that the defendant had not shown diligent pursuit of its rights and that the record revealed no justification for the delay. *Id.* In the present case, however, SWBT's delay was justified. After the court of appeals denied mandamus relief, plaintiffs alleged that SWBT violated its tariff with the Federal Communications Commission.[6] SWBT removed the case to federal district court, and that court remanded the case to state court eleven months later. From the time the case was removed to federal court until it was remanded to state court, the state court was prohibited from taking further action. *See* 28 U.S.C § 1446(d) (The filing of a notice of removal with the state court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."). Under these circumstances, SWBT did not waive its right to mandamus relief.

## B

### The PUC's Jurisdiction

■ Now we must decide whether the core claims fall within the PUC's exclusive jurisdiction. SWBT argues that the PUC should resolve this dispute because chapter 56 creates a comprehensive regulatory scheme for universal service in Texas, giving the PUC exclusive original jurisdiction. Plaintiffs argue that because SWBT elected incentive regulation, section 58.025 prohibits the PUC from hearing this dispute. *See* Tex. Util.Code § 58.025(a)(1).

■ We presume that district courts are authorized to resolve disputes unless the Constitution or other law conveys exclusive jurisdiction on another court or administrative agency. *Entergy,* 142 S.W.3d at 322. An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the Legislature in-

---

5. Plaintiffs contend that SWBT has an adequate remedy by appeal because section 26.051(b) of the Civil Practice and Remedies Code (added as part of House Bill 4) provides for interlocutory appeal of a trial court order denying a class action defendant's plea to the jurisdiction based on an agency's exclusive or primary jurisdiction. Tex. Civ. Prac. & Rem. Code § 26.051(b). Because this action was filed prior to September 1, 2003, however, new section 26.051 does not apply. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899 (eff. Sept. 1, 2003) ("Except as otherwise provided in this section or by a specific provision in an article, this Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.").

6. Like the core claims, this allegation is based on Plaintiffs' claim that SWBT had no authority to collect the TUSF surcharge.

tended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed. *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex. 2002). Whether an agency has exclusive jurisdiction is a matter of law that we review de novo. *Id.* at 222. If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction. *Id.*

■ We recently held that "PURA is intended to serve as a 'pervasive regulatory scheme' of the kind contemplated in *David McDavid Nissan.*" *Entergy,* 142 S.W.3d at 323 (concluding that the PUC has exclusive jurisdiction to hear a dispute between two electric companies). The same reasoning applies to this dispute. In section 52.002(a), the Legislature specifically granted the PUC "exclusive original jurisdiction over the business and property of a telecommunications utility." Tex. Util.Code § 52.002(a). In addition to this explicit grant of exclusive original jurisdiction, chapter 56 constitutes a comprehensive regulatory scheme for a Texas Universal Service Fund administered by the PUC. Section 56.021 directs the PUC to "adopt and enforce rules requiring local exchange companies to establish a universal service fund." *Id.* § 56.021. Section 56.022 provides that the universal service fund shall be funded by a uniform statewide charge paid "in accordance with procedures approved by the commission." *Id.* § 56.022. Section 56.023 directs the PUC to "adopt eligibility criteria and review procedures, including a method for administrative review ... to fund the universal service fund and make distributions from that fund." *Id.* § 56.023(a)(1). Thus,

PURA is intended to serve as a pervasive regulatory scheme that governs the Texas Universal Service Fund.

Plaintiffs argue that the PUC does not have jurisdiction because it cannot grant the relief they request. A close inspection of Plaintiffs' claims, however, reveals that the Legislature intended that the PUC determine this type of dispute and gave it the power to grant the relief requested. Plaintiffs' first amended petition, the live pleading when the trial court heard SWBT's jurisdictional plea, asserts various claims [7] that, in substance, asked the trial court to (1) declare that the TUSF surcharge violates PURA; and (2) order SWBT to return the surcharge (including accrued interest) to its customers.

■ The PUC, as the administrator of the TUSF, has the authority to grant such relief and has the expertise to decide this matter. The Legislature granted the PUC "the general power to regulate and supervise the business of each public utility within its jurisdiction and to do anything specifically designated or implied by this title that is necessary and convenient to the exercise of that power and jurisdiction." Tex. Util.Code § 14.001. With regard to the TUSF specifically, the Legislature directed the PUC to "adopt eligibility criteria and *review procedures, including a method for administrative review,* the commission finds necessary *to fund the universal service fund* " and the PUC "shall adopt rules for the administration of the universal service fund ... and may *act as necessary and convenient to administer the fund.*" *Id.* § 56.023(a)(1), (d) (emphasis added). For billing disputes, the PUC's authority is even more comprehensive, as it may "resolve disputes between a

---

**7.** Plaintiffs also asserted some claims in terms of rate cap violations under chapter 58. We

address that argument below.

retail customer and a billing utility, service provider, [or] telecommunications utility." *Id.* § 17.157(a). In exercising its authority in resolving disputes, the PUC may investigate an alleged violation, order a service provider to produce information or records, and require a service provider to "refund or credit overcharges or unauthorized charges with interest." *Id.* § 17.157(b)(1), (3), and (6). The PUC also has the authority to seek to enjoin a utility from engaging in acts that violate PURA, and it can assess administrative penalties against that utility. *Id.* § 15.021, .023. These provisions, along with the Legislature's grant to the PUC of "exclusive original jurisdiction over the business and property of a telecommunications utility," *id.* § 52.002(a), establish that the Legislature granted the PUC the authority to approve a TUSF surcharge, regulate a service provider's collection of the surcharge, hear disputes between customers and service providers concerning the TUSF, and grant refunds where appropriate. Moreover, plaintiffs' request for core-claim attorney's fees, presumably pursuant to the declaratory judgment act, TEX. CIV. PRAC. & REM.CODE § 37.009, cannot operate to vest the trial court with jurisdiction where there was none before. *Cf. Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir.1998) (noting that, "[a]lthough the Texas [Declaratory Judgment Act] expressly provides for attorney's fees, it functions solely as a procedural mechanism for resolving substantive 'controversies which are already within the jurisdiction of the courts'") (quoting *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex.App.-Corpus Christi 1992, writ denied)). As we explained in *Entergy*, the "specific grant to the PUC of 'exclusive original jurisdiction' makes it clear that the Legislature intended this dispute ... to begin its journey toward resolution at the PUC." *Entergy*, 142 S.W.3d at 323. Accordingly, we conclude that the PUC has exclusive jurisdiction over the core claims.

■ Plaintiffs attempt to cast some of their claims as a violation of chapter 58's rate caps (over which they assert the PUC lacks jurisdiction), but the pleadings demonstrate that their real point of contention is with the TUSF surcharge. Even if chapter 58 were implicated, two statutory provisions indicate that chapter 56—the TUSF chapter—controls over chapter 58. First, section 56.002 provides that if chapter 56 conflicts with another provision, chapter 56 prevails. TEX. UTIL.CODE § 56.002. Second, section 58.061 states that "[t]his subchapter [chapter 58] does not affect a charge permitted under ... Subchapter B, Chapter 56." *Id.* § 58.061. Thus, the PUC's exclusive jurisdiction over the TUSF surcharge is not affected by the chapter 58's rate cap provisions.

■ Our recent decision in *AT & T Communications of Texas v. Southwestern Bell Telephone*, 186 S.W.3d 517 (Tex.2006), also supports this conclusion. In *AT & T*, we determined that while the PUC cannot reduce switched access rates or determine their reasonableness, it is obligated to uphold duties listed in other provisions. *Id.* at 531–32. We specifically noted that "[t]he Commission's lack of authority to reduce switched access rates does not preclude it from determining that they have an anticompetitive effect and attempting to fashion an appropriate remedy within its power." *Id.* at 531. Likewise, in this case, while the PUC cannot determine the reasonableness of switched access rates under chapter 58, *see* TEX. UTIL.CODE § 58.025(a), it must nonetheless carry out its duties pursuant to chapter 56's regulatory scheme. *See, e.g.,* TEX. UTIL.CODE § 56.021–.023.

## C

### New claims asserted after the jurisdictional plea

■ After the trial court denied SWBT's jurisdictional plea, plaintiffs filed several amended petitions asserting new claims for breach of contract and violations of the Texas Deceptive Trade Practices–Consumer Protection Act, some of which pertain not to the TUSF, but to SWBT's "Touch-tone" charges. SWBT's plea to the jurisdiction was limited to the core claims, and its request for mandamus relief asks that we order the trial court to dismiss "those claims pending at the time [the trial court] denied Relator's Plea to the Jurisdiction." SWBT asserts that our decision on the core claims "may prove helpful to both the trial court and the litigants in resolving jurisdiction over the newly added [claims], and any future claims as well." We agree. SWBT also asks that we order the trial court to stay all claims not addressed by SWBT's plea to the jurisdiction pending the PUC's determination of the core claims, or that we direct the trial court to vacate its order denying the plea and conduct further proceedings consistent with this opinion. Although abatement may well be appropriate, we believe the latter course is the more prudent. SWBT has not yet filed a jurisdictional plea as to the new claims, and the parties have not briefed or presented those issues to the trial court. *See In re Perritt,* 992 S.W.2d 444, 446 (Tex. 1999). Should SWBT file such a plea as to the new claims, the trial court may consider it with the benefit of this opinion and our recent decision in *In re Sw. Bell Tel. Co., L.P.,* 226 S.W.3d 400 (Tex.2007) (holding that trial court abused its discretion in refusing to abate claims within the PUC's primary jurisdiction).

## III

### Conclusion

We conclude that the PUC has exclusive jurisdiction over the core claims, and the trial court abused its discretion in denying SWBT's jurisdictional plea. Accordingly, we conditionally grant the writ of mandamus as to those claims and direct the trial court to (1) vacate its January 6, 2004, order denying SWBT's motion to dismiss; (2) dismiss the core claims for lack of subject matter jurisdiction; and (3) conduct further proceedings consistent with this opinion. Tex.R.App. P. 52.8(c); *In re E.I. DuPont de Nemours & Co.,* 136 S.W.3d 218, 227 (Tex.2004). We are confident the trial court will promptly comply, and the writ will issue only if it does not.

Justice WILLETT did not participate in the decision.