

**NUMBER 13-09-00674-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

**IN RE: DALLAS NATIONAL INSURANCE COMPANY**

**On Petition for Writ of Mandamus.**

**MEMORANDUM OPINION**

**Before Chief Justice Valdez and Justices Yañez and Vela
Memorandum Opinion by Chief Justice Valdez**

Relator, Dallas National Insurance Company ("Dallas National"), filed a petition for writ of mandamus and a motion for temporary relief in which it requested this Court to order the respondent, the Honorable Noe Gonzalez, presiding judge of the 370th District Court of Hidalgo County, to rule on Dallas National's plea to the jurisdiction and motion to dismiss filed on January 3, 2007, in trial court cause number C-886-06-G, styled *Vega Roofing, Inc. v. Dallas National Insurance Company, formerly Dallas Fire Insurance Company, and First Mercury Insurance Company*. Dallas National asserts that the trial court conducted a hearing on the plea and the motion on March 6, 2007, and that it is entitled to mandamus

relief because the respondent has failed to rule on the plea and the motion. We conclude that Dallas National has not met its burden of proving that the trial court clearly abused its discretion in failing to rule on Dallas National's plea and motion; thus, we deny its petition for writ of mandamus and the accompanying motion for temporary relief.

## I. BACKGROUND

This dispute centers on the existence of insurance coverage for Jose Amparo Alfaro, an employee of Vega Roofing, Inc. ("Vega") who was severely and permanently injured on or about February 23, 2005, during the construction of a residence for Jose E. Garcia. The record reflects that Vega purchased a workers' compensation and employer's liability policy from Dallas National, which was effective from June 20, 2004 to June 20, 2005, and had a $1 million policy limit. Vega was also covered from January 1, 2005 to January 3, 2006, by a commercial general liability policy ("CGL") issued by First Mercury Insurance Company. The CGL policy also had a $1 million personal injury policy limit. Vega alleged that, during the policy period of the Dallas National policy, Alfaro was injured at the Garcia job site and, therefore, Alfaro's injury was covered by the Dallas National policy. Vega subsequently filed a claim with Dallas National, but this claim was denied. Vega alleged that the Alfaro claim was refused because Dallas National denied the existence of a valid and enforceable policy covering Alfaro.

On April 11, 2006, Vega sued Dallas National for breach of contract and for declaratory relief, seeking a judgment that insurance coverage existed for Alfaro under the workers' compensation and employer's liability policy issued by Dallas National. Dallas National filed its original answer and a motion to transfer venue on May 12, 2006. On November 1, 2006, Garcia intervened in the suit, adding J.P. Monday, individually and d/b/a Monday Builders and all other unknown Monday entities as defendants (the "Monday

2

defendants") and alleging various causes of action pertaining to the construction of the residence. Additionally, Garcia asserted that he is a third-party beneficiary on the underlying workers' compensation and employer's liability policy and, thus, sued Dallas National for breach of contract. Alfaro and his wife, Eloisa Verdin Alfaro, also intervened in the suit, alleging that the cause of his injuries was attributable to Vega, the Monday defendants, and possibly Garcia.[1]

Dallas National filed a plea to the jurisdiction and a motion to dismiss subject to its motion to transfer venue on January 3, 2007. In its plea and motion, Dallas National argued that the trial court lacked subject-matter jurisdiction over the entire case because the Texas Workers' Compensation Commission has exclusive jurisdiction to determine whether, on the date of his injury, Alfaro was covered under the Dallas National policy. The trial court conducted a hearing on Dallas National's plea and motion on March 6, 2007. At the conclusion of the hearing, the trial court took the matter under advisement.

On July 12, 2007, Dallas National sent a follow-up letter and a proposed order granting the plea and motion to the trial court, requesting that the trial court sign the order. On December 17, 2007, Dallas National sent a second letter and proposed order to the trial court, again requesting that the trial court sign the order. Finally, on October 7, 2009, Dallas National sent a third letter and proposed order to the trial court to be signed. Because the trial court has not responded to its requests for a ruling, Dallas National filed this petition for writ of mandamus on December 16, 2009.

Pursuant to this Court's request, real parties-in-interest Vega and Garcia each filed a response to Dallas National's petition. In its response, Vega argues that the trial court

---

[1] In addition to the underlying suit in this case, the Alfaros filed a separate non-subscriber lawsuit against Vega and the Monday defendants in a separate cause and court.

has jurisdiction over the underlying dispute because the issue is a breach-of-contract issue, not an issue involving entitlement to workers' compensation benefits. Vega further argues that the trial court had no "ministerial duty" to rule favorably on Dallas National's plea and motion and that the trial court's assertion of jurisdiction does not "create a clear disruption of the orderly processes of government under the facts presented in this case." (Internal quotations omitted.)

In his response, Garcia argues that: (1) because Vega and Garcia's claims against Dallas National are predicated on the absence of coverage, the claims are outside the jurisdiction of the Texas Workers' Compensation Division; (2) Dallas National cannot complain about the trial court's failure to rule because it waited nearly two years between requests for rulings from the trial court; and (3) Dallas National waived any right to complain of the trial court's failure to rule by not objecting. Garcia also asserts that the Alfaros filed a separate non-subscriber lawsuit against Vega and the Monday defendants "in a separate cause and court," and that "Dallas National's claims of court delay are disingenuous because the parties had discussed and allowed the underlying Alfaro liability case to proceed with minimum interference." Dallas National filed a reply responding to most of the arguments made by Vega and Garcia; however, Dallas National did not address the status, nor the existence, of the allegedly related Alfaro non-subscriber lawsuit.

## II. Standard of Review and Applicable Law

"Mandamus relief is an extraordinary remedy that issues only if the court clearly abused its discretion and the relator has no adequate remedy by appeal." *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 623 (Tex. 2007) (citing *In re Entergy Corp.*, 142 S.W.3d 316, 320 (Tex. 2004)). "To show entitlement to mandamus relief, a relator must (1) show that it has no adequate remedy at law to redress the alleged harm and (2) the act sought to be

4

compelled is ministerial and does not involve a discretionary or judicial decision." *In re Bramlett*, No. 07-09-0113-CV, 2009 Tex. App. LEXIS 5228, at *2 (Tex. App.–Amarillo July 8, 2009, orig. proceeding) (mem. op.) (citing *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007); *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 198 (Tex. Crim. App. 2003)). Furthermore, a relator must also demonstrate entitlement to mandamus relief by showing that "the district court (1) had a legal duty to perform a non-discretionary act, (2) was asked to perform the act, and (3) failed or refused to do so." *In re Villarreal*, 96 S.W.3d 708, 710 (Tex. App.–Amarillo 2003, orig. proceeding) (citing *O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 97 (Tex. 1992); *In re Chavez*, 62 S.W.3d 225, 228 (Tex. App.–Amarillo 2001, orig. proceeding)); *see In re Blakeney*, 254 S.W.3d 659, 661 (Tex. App.–Texarkana 2008, orig. proceeding). Thus, "the party requesting mandamus relief has the burden to provide us with a record sufficient to establish his right to same." *Ex parte Bates*, 65 S.W.3d 133, 135 (Tex. App.–Amarillo 2001, orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992)); *see In re Blakeney*, 254 S.W.3d at 661.

Consideration of a motion that is properly filed and before the trial court is a ministerial act, and mandamus may issue to compel the trial court to act. *See Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992); *In re Blakeney*, 254 S.W.3d at 661; *see also In re Bramlett*, 2009 Tex. App. LEXIS 5228, at *3. However, the trial court has a reasonable time within which to perform its ministerial duty. *See In re Blakeney*, 254 S.W.3d at 661; *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.–San Antonio 1997, orig. proceeding); *see also In re Bramlett*, 2009 Tex. App. LEXIS 5228, at *3. A trial court's refusal to rule on a pending motion within a reasonable amount of time constitutes a clear abuse of discretion. *See In re Shredder Co.*, 225 S.W.3d 676, 679

(Tex. App.–El Paso 2006, orig. proceeding) (citing *In re Greenwell*, 160 S.W.3d 286, 288 (Tex. App.–Texarkana 2005, orig. proceeding)).

Whether a reasonable time has lapsed is dependent upon the circumstances of each case. *In re Blakeney*, 254 S.W.3d at 662. "Determining what time period is reasonable is not subject to exact formulation. . . . Moreover, no bright line separates a reasonable time period from an unreasonable one." *Id.* (citing *In re Keeter*, 134 S.W.3d 250, 253 (Tex. App.–Waco 2003, orig. proceeding); *In re Chavez*, 62 S.W.3d at 228). In analyzing whether a reasonable period has lapsed, Texas courts have noted the following:

> "[A reasonable time to rule] is dependent upon a myriad of criteria, not the least of which is the trial court's actual knowledge of the motion, its overt refusal to act on same, *the state of the court's docket, and the existence of other judicial and administrative matters which must be addressed first. Ex parte Bates*, 65 S.W.3d 133[, 135] (Tex. App.–Amarillo 2001, orig. proceeding). *So too must the trial court's inherent power to control its own docket be factored into the mix. See Ho v. Univ. of Tex. at Arlington*, 984 S.W.3d 672, 694-95 (Tex. App.–Amarillo 1998, pet. denied) (holding that a court has the inherent authority to control its own docket)."

*In re Blakeney*, 254 S.W.3d at 663 (quoting *In re Chavez*, 62 S.W.3d at 228-29) (emphasis added). Furthermore, since the trial court's power to control its own docket is discretionary, a reviewing appellate court may not arbitrarily interfere with it. *See Ex parte Bates*, 65 S.W.3d at 135.

### III. DISCUSSION

The parties do not dispute that Dallas National's plea and motion were properly filed and that the trial court's ruling on Dallas National's plea and motion constitutes a ministerial duty. In its response, Vega argued that the trial court did not have a ministerial duty to rule favorably on Dallas National's plea and motion. However, this argument is not persuasive because we must not reach the merits of Dallas National's plea and motion or direct the trial court as to how to rule on the plea and motion. *See In re Blakeney*, 254 S.W.3d at

6

661; *O'Donniley v. Golden*, 860 S.W.2d 267, 269 (Tex. App.–Tyler 1993, orig. proceeding) ("While it is a basic premise that an appellate court lacks the power to compel a trial judge to do a particular act involving or requiring discretion on his part, this Court is empowered to order a trial judge to exercise his discretion in some manner."); *see also In re Minnfee*, No. 07-09-0005-CV, 2009 Tex. App. LEXIS 332, at *2 (Tex. App.–Amarillo Jan. 16, 2009, orig. proceeding) (mem. op.) ("[W]e cannot tell a trial judge how to rule on motions pending before them before the trial judge himself rules on them."). We therefore conclude that the trial court has a ministerial duty to rule on Dallas National's plea and motion. *See Marshall*, 829 S.W.2d at 158; *In re Blakeney*, 254 S.W.3d at 661; *In re Chavez*, 62 S.W.3d at 228 ("[A]dmittedly, the need to consider and rule upon a motion is not a discretionary act."); *see also In re Bramlett*, 2009 Tex. App. LEXIS 5228, at *3. Therefore, the crux of Dallas National's complaint in its petition is whether a reasonable time has lapsed for the trial court to rule on Dallas National's plea and motion.

In support of its contention that a reasonable time has lapsed for the trial court to rule on its plea and motion, Dallas National directs us to the three letters that it sent to the trial court, requesting that the trial court rule on the pending plea and motion. As noted earlier, the letters are dated July 12, 2007, December 17, 2007, and October 7, 2009, and each contains a proposed order granting Dallas National's plea and motion and a request for the trial court to sign the proposed order. Thus, the evidence demonstrates that Dallas National has requested a ruling from the trial court, and the trial court has failed to rule. *See In re Blakeney*, 254 S.W.3d at 661; *see also In re Villarreal*, 96 S.W.3d at 710; *In re Chavez*, 62 S.W.3d at 228.

In its petition, however, Dallas National relies solely on the mere passage of time to support its request for mandamus relief. Nowhere in its petition does Dallas National

7

address the other factors articulated in *In re Blakeney* and *In re Chavez*. *See In re Blakeney*, 254 S.W.3d at 663; *see also In re Chavez*, 62 S.W.3d at 228-29. Notably, Dallas National does not apprise this Court of the existence or the status of the Alfaros' non-subscriber lawsuit pending in another district court. As previously mentioned, Garcia references the Alfaros' non-subscriber lawsuit in his response to Dallas National's petition and specifically notes that "Dallas National's claims of court delay are disingenuous because the parties had discussed and allowed the underlying Alfaro liability case to proceed with minimum interference." Furthermore, a review of the transcript of the March 6, 2007 hearing yields the following statements:

THE COURT: Because if comp applies, then you [Vega] are covered. You are now a subscriber . . . .

. . . .

THE COURT: So if you get a dec[laratory judgment] action to establish that there is—that you subscribed to comp insurance, then that case doesn't go forward.

. . . .

THE COURT: You see? And because you have in your pleadings both, I know what you were trying to do, you are trying to say, [l]ook, we had comp insurance, and if we don't, we have liability insurance.

. . . .

THE COURT: But if you have comp insurance, liability doesn't kick in. So what would be the purpose of it? Under Texas law, if—let's assume you tried a case over there and they pop you, and then you get comp insurance over here, I mean, you are now a subscriber. But the facts in that case forced you—forced you to have to deal with a liability claim. So their claim would be, I guess, a breach of contract, although they were a

8

subscriber, they ended up being treated as a non[-]subscriber over there . . . .

. . . .

THE COURT: I talked to Judge Flores, and he said it didn't matter to him one way or the other. . . . I need to sit down and talk to him to see how he wants to handle it, if in fact we decide to transfer cases back and forth.

. . . .

THE COURT: But it seems to me that the most efficient way to do it . . . in a case of this type where they are saying, [l]ook, we have a liability claim, we want—if we get hit with damages over in the 139th, as a non[-]subscriber, because they proceeded against us as a non[-]subscriber, well, what is our remedy? Mind you, that they proceeded. See? This is not—this is a—an injured party proceeding as a non[-]subscriber. They have every right to do that because they have been told by your insurance company, you are not covered under comp.

. . . .

THE COURT: But one of the things that the *Texas Mutual Insurance* case talks about is, you can determine whether there is comp coverage for terms of a comp bar defense. And so obviously the courts have brought that issue up that that could be asserted over there. Now, do we want that issue?

Let's assume that this case is tried and this jury finds, there is comp coverage and liability coverage, okay, that means, hey, hold your horses over there, injured party, if you are considered an employee, under this policy, you have got to go over to the commission.

. . . .

[Counsel for the Monday defendants]: We don't have an interest in either of these

9

motions, but just to refresh the Court's memory, we were here last week on a motion to, in essence, consolidate the cases [this case and the Alfaros' non-subscriber case]. And I think that the Court's analysis of this is insightful in the sense that I think that one may look at this case—cases and say, they probably need to be together.

THE COURT: Well, they at least need to be coordinated by the courts, at the very least, if not put in the same court, so that the Court can take notice of which one needs to be tried first, if they are severed. And I think that there is [sic] some severance issues that need to take place here. And certainly, if—because if comp applies, most of this goes away.

. . . .

THE COURT: Okay. All right. Well, let me talk to my fellow judge down the hall and upstairs, and I will go ahead and figure out what to do with it.

Clearly, the above-mentioned statements support Garcia's contention that a second lawsuit arising out of the same set of facts and circumstances is pending in another court, presumably the 139th District Court of Hidalgo County.

Among the myriad of factors that an appellate court reviews in determining whether a reasonable time has lapsed is "the existence of other judicial and administrative matters which must be addressed first." *See In re Blakeney*, 254 S.W.3d 659; *see also In re Chavez*, 62 S.W.3d at 229. The record suggests that the trial court is deferring judgment in this case until the Alfaros' non-subscriber lawsuit is resolved in another district court. In any event, because Dallas National has not apprised this Court of the existence and status of the related Alfaro liability case pending in another court, and because the statements made by the trial court at the March 6, 2007 hearing suggest that the trial

10

courts are coordinating the two cases, we cannot say that the trial court has clearly abused its discretion in failing to rule on a pending motion within a reasonable time. *See In re Shredder Co.*, 225 S.W.3d at 679; *In re Greenwell*, 160 S.W.3d at 288; *see also In re Blakeney*, 254 S.W.3d 659; *In re Chavez*, 62 S.W.3d at 229. Furthermore, we are reluctant to interfere with the trial court's control over its own docket, especially when relator has not clearly informed this Court as to what is transpiring in the trial courts. *See Ex parte Bates*, 65 S.W.3d at 135.

We note with disapproval that the petition for writ of mandamus, appendix, and record filed by Dallas National was misleading and incomplete and failed to comply with the requirements of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 52.3(k), 52.7(a). Therefore, based on the foregoing, we conclude that Dallas National has not shown itself entitled to the extraordinary remedy of mandamus relief. *See In re Sw. Bell Tel. Co.*, 235 S.W.3d at 623; *Walker*, 827 S.W.2d at 837; *Ex parte Bates*, 65 S.W.3d at 135; *see also In re Blakeney*, 254 S.W.3d at 661. Accordingly, we deny Dallas National's petition for writ of mandamus and the accompanying motion for temporary relief.

_____
ROGELIO VALDEZ,
Chief Justice

Dissenting Memorandum Opinion by
Justice Linda R. Yañez

Delivered and filed the
17th day of March, 2010.

11