# NO. 12-13-00139-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: EXXONMOBIL CORPORATION AND COMPUTERSHARE INVESTOR SERVICES, LLC, RELATORS* | § § § | *ORIGINAL PROCEEDING* |

## *MEMORANDUM OPINION*

ExxonMobil Corporation (Exxon) and Computershare Investor Services, L.L.C. (CIS), relators, are the defendants in a lawsuit filed by the real party in interest, Vivian Suzanne Kinard, Independent Executrix of the Estate of Grace T. Eaton. Exxon and CIS request a writ of mandamus directing the trial court to set aside its order of April 25, 2013, rendered in the probate proceeding involving Eaton's estate. In that order, the trial court granted Kinard's motion for turnover of assets and required Exxon and CIS to immediately issue and transfer 8,000 shares of Exxon stock to Eaton's estate and deliver the shares to Kinard in her capacity as independent executrix. The respondent is the Honorable Chad Dean, Judge of the County Court at Law of Rusk County, Texas. We conditionally grant the petition.

## BACKGROUND

Kinard's dispute with Exxon and CIS centers on an unaccounted-for certificate for 8,000 shares of Exxon stock. Prior to 2001, Eaton was the owner of 8,000 shares of Exxon stock. In 2001, those shares split, and Exxon, through its agent CIS, should have sent Eaton a certificate for an additional 8,000 shares of Exxon stock. After Eaton's death in 2011, Kinard, her daughter, was appointed independent executrix and gathered the assets of Eaton's estate. She located certificates for the 8,000 shares of stock Eaton owned prior to 2001 but was unable to find a certificate (Certificate Number 7320W) for the additional 8,000 shares Eaton owned as a

result of the stock split. When Kinard attempted to obtain a replacement certificate, Exxon and CIS informed Kinard that she first would need to file a corporate indemnity bond.

Kinard contended that the certificate was not lost, but instead was never received. She also refused to purchase a corporate bond, the price of which approached $21,000.00, to correct a mistake that she believed had been made by either Exxon or CIS. Unable to resolve the issue, Kinard sued Exxon and CIS alleging that they were negligent. Exxon and CIS answered and raised several affirmative defenses, including that Kinard failed to comply with Texas Business and Commerce Code Section 8.405(a) relating to the replacement of lost security certificates.

The county clerk assigned cause number 11-173P to the probate proceeding involving Eaton's estate and cause number 11-173A to Kinard's suit against Exxon and CIS. Shortly after Exxon and CIS answered, Kinard filed a motion for turnover of assets asserting that Exxon and CIS are currently in possession of Certificate Number 7320W representing 8,000 shares of Exxon stock that are assets of Eaton's estate. Kinard served Exxon and CIS with the motion, which she had filed under cause number 11-173P. Exxon and CIS filed a response under cause number 11-173A, and the trial court set a hearing on the motion.

Kinard cited no authority in her motion to support her request for a turnover order. At the hearing, however, Kinard explained that she was proceeding under Texas Probate Code Section 233 and sought an order from the trial court requiring Exxon and CIS to issue and transfer 8,000 shares of Exxon stock to Eaton's estate and deliver the shares to Kinard. Exxon and CIS objected to the hearing because both entities had requested a jury trial in Kinard's suit against them, and Kinard's motion for turnover went directly to the basis of that suit. After Exxon and CIS explained to the trial court that proceeding with the hearing would be improper, the trial court determined that it would hear the evidence that either side wanted to put into the record and then allow more discussion.

Kinard's attorney, Bill Wylie, testified that stock certificates must be dealt with carefully. He believed that stock certificates should be mailed only by registered mail but that CIS, as Exxon's agent, instead chose to mail the stock certificate to Eaton by regular first class mail. He had not seen any proof from Exxon or CIS that the stock certificate had been mailed. Other than the certificate number that CIS provided, Wylie had not seen any evidence that the shares were even issued.

Wylie further testified that Exxon was being unreasonable in requiring a corporate indemnity bond. He contended that personal indemnification from Kinard should suffice because (1) it was not Eaton's or Kinard's fault that the stock certificate was lost, (2) Eaton had received the dividends from the stock for eleven years so it was unlikely that someone else was in possession of the certificate, and (3) a stop transfer restriction had been placed on the lost or original stock certificate.

Wylie conceded that requiring a corporate bond is not unusual for replacement of a lost certificate. He also conceded that he does not know who has the certificate or where it is.

Kinard testified that the stock certificate could not be found. She never saw the stock certificate, and Eaton never spoke to her about it. During the time period when the stock certificate purportedly was mailed, Eaton was still handling her own affairs. Consequently, Kinard saw some, but not all, of Eaton's mail and would not have necessarily handled the stock certificate. Kinard believed that if Eaton had received the stock certificate, she would have put it with the other certificates she found. Because that certificate was not with the others, Kinard did not believe that Exxon ever sent the stock certificate to Eaton.

The trial court then asked Exxon and CIS if they had any evidence to present. Exxon and CIS claimed they were not prepared to present evidence because they did not know the trial court was going to conduct an evidentiary hearing on the motion.

The trial court granted Kinard's motion. In an order dated April 25, 2013, the trial court ordered Exxon and CIS to immediately issue and transfer to Eaton's estate 8,000 shares of Exxon stock and immediately deliver the stock to Kinard as independent executrix of Eaton's estate. Exxon and CIS then filed this original proceeding challenging the trial court's order. They also filed a motion for emergency relief. We granted the motion, and stayed the proceedings in the trial court until further order of this court.

## AVAILABILITY OF MANDAMUS

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). To obtain mandamus relief, the relator must show that (1) the trial court clearly abused its discretion, and (2) the benefits of mandamus outweigh the detriments to the extent that an appellate remedy is inadequate. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 346-47 (Tex. 2008) (orig. proceeding).

3

A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the relator must establish that the trial court could reasonably have reached only one decision. *Id*. at 840. We cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable, even if we would have decided the issue differently. *Id*. However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Id*. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id*.

In providing guidance for determining whether an appellate remedy is adequate, the Texas Supreme Court has noted that the operative word, "adequate," has no comprehensive definition. *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). Instead, it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. *Id*. These considerations include both public and private interests, and the determination is practical and prudential rather than abstract or formulaic. *Id*. Thus, the adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

When the benefits of mandamus review outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate. *Id*. "Mandamus will not issue when the law provides another, plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding).

## THE MOTION

We begin our analysis by determining the nature of Kinard's motion for turnover of assets.

### Standard of Review and Applicable Law

When justice requires, the court shall treat a mistakenly designated pleading or plea for relief as if it had been properly designated. TEX. R. CIV. P. 71. "[W]e look to the substance of a

motion to determine the relief sought, not merely to its title." *In re Estate of Hutchins*, 391 S.W.3d 578, 585 (Tex. App.—Dallas 2012, orig. proceeding) (quoting *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999)).

Generally, a personal representative of an estate must use ordinary diligence to recover possession of all property of the estate to which its owners have claim or title. TEX. PROB. CODE ANN. § 233(a) (West 2003). But when that property is a lost security certificate, the personal representative must (1) request a new certificate before the issuer has notice that the certificate has been acquired by a protected purchaser, (2) file with the issuer a sufficient indemnity bond, and (3) satisfy other reasonable requirements imposed by the issuer. *See* TEX. BUS. & COMM. CODE ANN. § 8.405(a) (West 2011).

**Application**

Here, Kinard cites no authority supporting her motion for a turnover order. But from the substance of the motion, it is clear that Kinard sought to recover possession of Certificate Number 7320W. Under Section 233(a) of the probate code, the trial court had the authority to direct Exxon and CIS to deliver Certificate Number 7320W to Kinard if the certificate was in their possession. *See In re Hutchins*, 391 S.W.3d at 589. However, Kinard produced no evidence that Exxon and CIS have possession of Certificate Number 7320W. Instead, she testified that she never saw Certificate Number 7320W, could not find it after her mother's death, and believed her mother would have put it with her other Exxon stock certificates if she had received it.

In its order, the trial court directed Exxon and CIS to "issue" and "transfer" 8,000 shares of Exxon stock to Eaton's estate. Thus, the trial court recognized, at least implicitly, that Exxon and CIS did not have possession of Certificate Number 7320W. It did not order Exxon and CIS to deliver the already existing Certificate Number 7320W because that would have required the impossible. As far as the record indicates, no one knows where Certificate Number 7320W is or if it still exists.

Because Certificate Number 7320W cannot be found, it cannot simply be turned over to the proper owner, but instead must be replaced. Therefore, Kinard must comply with the requirements for recovering a lost security certificate. *See* TEX. BUS. & COMM. CODE ANN. § 8.405. Because Kinard filed an adversary proceeding regarding Exxon and CIS's failure to replace Certificate 7320W, and Exxon and CIS requested a jury, it is for the jury to decide

5

whether Kinard has complied with Section 8.405. The trial court abused its discretion when it focused solely on Texas Probate Code Section 233(a) and did not apply Texas Business and Commerce Code Section 8.405.

We also conclude that Exxon and CIS lack an adequate remedy by appeal. Here, the benefits of mandamus review are obvious. Kinard has an adversary proceeding pending against Exxon and CIS. Whether Kinard complied with Section 8.405 should be decided in that trial. Waiting until appeal to rectify the trial court's error invites an unnecessary trial and wastes judicial and public resources. *See In re Prudential*, 148 S.W.3d at 137. Further, at least two courts have held mandamus is a proper remedy to cure a trial court's improper denial of a personal representative's unsuccessful attempt to recover property of an estate. *In re Hutchins*, 391 S.W.3d at 590; *Bloom v. Bear*, 706 S.W.2d 146, 147 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding). We see no reason for the converse situation to be treated differently.

## DISPOSITION

For the reasons set forth above, we have concluded that the trial court abused its discretion in granting Kinard's motion for turnover of assets and that Exxon and CIS lack an adequate remedy by appeal. Accordingly, we ***conditionally grant*** Exxon and CIS's petition for writ of mandamus and direct the trial court to (1) vacate its order granting Kinard's motion for turnover of assets and (2) issue an order denying the motion. We trust that the trial court will promptly comply with this opinion and order. The writ will issue only if the trial court fails to do so ***within ten days of the date of the opinion and order***. The trial court shall furnish this court, within the time for compliance with this court's opinion and order, a certified copy of its order evidencing compliance. This court's stay is ***lifted***.

**BRIAN HOYLE**
Justice

Opinion delivered August 7, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 7, 2013**

**NO. 12-13-00139-CV**

**EXXONMOBIL CORPORATION AND
COMPUTERSHARE INVESTOR SERVICES, LLC,**
Relators
v.
**HON. CHAD W. DEAN**,
Respondent

### ORIGINAL PROCEEDING

ON THIS DAY came to be heard the petition for writ of mandamus filed by **EXXONMOBILCORPORATION AND COMPUTERSHARE INVESTOR SERVICES, LLC**, who are the relators in Cause No.11-173A, pending on the docket of the County Court of Rusk County, Texas. Said petition for writ of mandamus having been filed herein on April 26, 2013, and the same having been duly considered, because it is the opinion of this Court that the petition is meritorious, it is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of mandamus be, and the same is, **conditionally granted**.

And because it is further the opinion of this Court that the trial judge will act promptly and (1) vacate its order granting Vivian Suzanne Kinard's motion for turnover of assets and (2) issue an order denying Vivian Suzanne Kinard's motion, the writ will not issue unless the Honorable Chad W. Dean, Judge of the County Court of Rusk County, Texas, fails to comply with this court's order **within ten (10) days** from the date of this order.

It is further ORDERED that **VIVIAN SUZANNE KINARD** pay all costs incurred by reason of this proceeding**.**

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*