# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00742-CV

**Nawaid Isa, Appellant**

**v.**

**CenterPoint Energy Houston Electric, LLC and Ambit Energy, LLC, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GN-15-005240, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Pro se appellant Nawaid Isa sued appellees CenterPoint Energy Houston Electric, LLC, and Ambit Energy, LLC, alleging fraudulent, unfair, misleading, deceptive, or anti-competitive business practices in their contracting to provide electric service to a playing field owned by Isa. CenterPoint and Ambit filed pleas to the jurisdiction, which the trial court granted, dismissing Isa's lawsuit. As explained below, we will affirm the trial court's dismissal order.

### Factual and Procedural Summary

In 2013, Isa contacted CenterPoint for information on constructing field lights on his cricket field. CenterPoint sent a representative to the property and discussed costs of installation. Isa and CenterPoint eventually signed a contract for CenterPoint to install an in-line pole on the property. After the pole was constructed, Isa arranged for electric service to be provided by Ambit, a retail electric provider (REP), signing a one-year, fixed-term contract.

When Isa received substantially higher bills than expected, he filed a complaint with the Public Utility Commission (PUC). During that proceeding an administrative law judge (ALJ) partially denied motions to dismiss filed by Ambit and CenterPoint, determining that there were fact questions that precluded summary judgment. The ALJ granted the motions to dismiss as to Isa's claims seeking damages beyond those allowed in the Public Utility Regulatory Act (PURA). *See generally* Tex. Util. Code §§ 11.001-66.016. Ambit eventually credited Isa's account for the disputed charges, and the administrative complaint was then dismissed as moot. Isa attempted to appeal from that dismissal, but those efforts were unsuccessful because he did not file a motion for rehearing and thus did not exhaust his administrative remedies under the Administrative Procedures Act. *See Isa v. Public Util. Comm'n of Tex.*, 528 S.W.3d 609, 619 (Tex. App.—Texarkana 2017, pet. denied) ("Since Isa was required to exhaust his administrative remedies by filing a motion for rehearing and failed to do so, the trial court lacked subject-matter jurisdiction."); *see also* Tex. Gov't Code §§ 2001.145 (timely motion for rehearing is prerequisite to appeal); .171 (party who has exhausted all administrative remedies may seek judicial review); *see generally id.* §§ 2001.001-.902 (Administrative Procedures Act).

In 2015, Isa filed the underlying lawsuit, asserting that Ambit and CenterPoint had violated the Deceptive Trade Practices Act (DTPA), PURA, and various PUC rules. He sought damages for loss of revenue, mental anguish, pain, and suffering, as well as exemplary damages. Both Ambit and CenterPoint filed pleas to the jurisdiction, asserting that the PUC had exclusive jurisdiction over Isa's complaints, that Isa had not exhausted his administrative remedies, and that Isa's complaints were moot. The trial court agreed and dismissed Isa's suit.

**Discussion**

Isa argues on appeal that because the PUC cannot grant the relief he seeks, the trial court should have exercised jurisdiction over his claims. He asserts that the ALJ determined that certain PUC rules applied to Ambit and CenterPoint and that providing remedies for violations of rule 25.22(5) and (7) are beyond the PUC's jurisdiction. Finally, he argues that the remedies provided under PURA "collide immitigably with remedies under [the] DTPA."

An agency has exclusive jurisdiction when the legislature has established a pervasive regulatory scheme, evidencing an intent "for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Southwestern Bell Tel. Co.*, 235 S.W.3d 619, 624-25 (Tex. 2007). "If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction." *Id*. at 625. The supreme court has explained that PURA, described in the act itself as "comprehensive," was intended by the legislature to "comprehend all or virtually all pertinent considerations involving electric utilities operating in Texas." *In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004). Thus, PURA is "a pervasive regulatory scheme" granting the PUC exclusive jurisdiction over disputes related to utility rates, operations, and services. *Id.*; *see also Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 140-41 (Tex. 2018) ("In light of section 32.001(a)'s express language and the comprehensive regulatory scheme PURA creates, we conclude that PURA grants the PUC exclusive jurisdiction over all matters involving an electric utility's rates, operations, and services.").

3

Chapter 17 of PURA sets out a pervasive, comprehensive statutory scheme governing the resolution of disputes between customers and their utilities and REPs. *See, e.g.*, Tex. Util. Code §§ 17.001(b) (Chapter 17 establishes "retail customer protection standards and confer[s] on the commission authority to adopt and enforce rules to protect retail customers from fraudulent, unfair, misleading, deceptive, or anticompetitive practices"), .004 (PUC "may adopt and enforce rules as necessary or appropriate to carry out this section," which sets out customer protection standards), .051 (PUC "shall adopt rules relating to certification, registration, and reporting requirements for a certificated telecommunications utility, a retail electric provider, or an electric utility"), .102 (PUC "shall adopt and enforce rules" aimed at ensuring "customers are protected from deceptive practices employed in obtaining authorizations of service and in the verification of change orders"), .156 (if PUC determines that billing utility "violated this subchapter, the commission may implement penalties and other enforcement actions under Chapter 15"[1]), .157 (PUC may resolve disputes between retail customer and utility or REP and may require utility or REP to "refund or credit overcharges or unauthorized charges with interest"); *see also id.* § 39.101 ("Customer Safeguards") (PUC "shall ensure that retail customer protections are established" entitling customers to, *inter alia*, safe, reliable, and reasonably priced electricity; understandable billing; accurate metering and billing; "other information or protections necessary to ensure high-quality service to customers"; choice in

---

[1] Chapter 15 governs "Judicial Review, Enforcement, and Penalties," including requiring that a person seek judicial review of a PUC order by filing a petition pursuant to section 2001.171 of the Administrative Procedures Act. *See* Tex. Util. Code § 15.026(a); *see generally id.* §§ 15.001-.107; *see also* Tex. Gov't Code § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.")

4

REPs; protection "from unfair, misleading, or deceptive practices"; "impartial and prompt resolution of disputes"; "The commission has jurisdiction over all providers of electric service in enforcing Subsections (a)-(d) and may assess civil and administrative penalties under Section 15.023 and seek civil penalties under Section 15.028."). The supreme court has said, "For billing disputes, the PUC's authority is even more comprehensive, as it may 'resolve disputes between a retail customer and a billing utility, service provider, [or] telecommunications utility.'" *Southwestern Bell*, 235 S.W.3d at 625-26 (quoting Tex. Util. Code § 17.157(a)).

Isa asserts that CenterPoint and Ambit violated various PUC rules and seeks damages under the DTPA, but as the ALJ observed, Isa seeks damages that are not authorized by PURA and are beyond the PUC's authority to grant. Isa agrees and argues that because the PUC does not have the ability to award him the damages he requests, the trial court has jurisdiction over his claims.[2] He contends that he may seek such damages in the trial court under a "hybrid claims-resolution process," citing to the supreme court's decision in *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212 (Tex. 2002). In that opinion, the court concluded that the Texas Motor Vehicle Board, which had exclusive jurisdiction over the "claims and issues the [Texas Motor Vehicle Commission Code] governs," limited the remedies the Board could grant, expressly allowed a party to sue under the DTPA based on Code violations, and provided that the duty of good faith and fair dealing imposed by the Code was "actionable in tort." *Id.* at 223-24. Therefore, the court

---

[2] Contrary to Isa's contention, the ALJ's observation that Isa sought damages beyond the PUC's authority does not equate to a "finding" that such damages could be sought elsewhere. Indeed, the ALJ said not only that Isa sought damages beyond the PUC's authority to grant, but also that such damages "cannot be recovered."

held, "the Code creates a hybrid claims-resolution process by which parties may seek damages for certain Code violations," provided that the party first exhausts its "administrative remedies to obtain a Board decision about Code violations, if any, to support a DTPA or bad-faith claim." *Id.* at 224.

Recently, the supreme court discussed the hybrid claims-resolution process in the context of PURA in *Chaparral Energy*, in which Chaparral sued Oncor for breach of contract when Oncor did not meet its obligations under the Service Agreement between the parties. 546 S.W.3d at 137. Chaparral sought actual damages, additional damages, interest, attorney's fees, expenses, and taxable costs and argued that "even if this case would otherwise fall within the PUC's exclusive jurisdiction, the 'inadequate-remedy exception' to the exhaustion-of-remedies requirement applies." *Id*. at 141. The court explained that the inadequate-remedy exception applies "when the claimant cannot obtain an adequate remedy through the administrative process and requiring the claimant to go through the process would cause the claimant irreparable harm" and concluded that the exception did not apply "because PURA does not prevent Chaparral from obtaining the damages it seeks in the district court after the PUC has exercised its exclusive jurisdiction." *Id.* at 141-42. The court reiterated that under the hybrid claims-resolution process, the claimant must first its exhaust administrative remedies and obtain an agency decision on the issues within the agency's exclusive jurisdiction before filing suit to obtain relief that the agency cannot provide. *Id*. at 142. This process applies when the statutory scheme, such as PURA, necessitates "that an administrative agency with exclusive jurisdiction make certain findings before a trial court may finally adjudicate a claim." *Id.*

Assuming that the hybrid claims-resolution process applies here, Isa's suit for damages relies on his assertions that appellees violated various PUC rules. Those claims of rules

6

violations are within the exclusive jurisdiction of the PUC. *See id.* However, Isa did not exhaust his administrative remedies and obtain agency rulings on these claims and thus cannot seek non-PURA-authorized damages in the trial court under the hybrid process.[3] *See id.*; *David McDavid*, 84 S.W.3d at 224.

Although Isa asserts that he should be allowed to pursue damages under the DTPA, citing *David McDavid* for support, that case involved a different statutory scheme, one that specifically allowed someone who has sustained actual damages to bring a DTPA claim. 84 S.W.3d at 225. PURA does not contain such a provision. As Isa notes, Section 17.203 states, "The customer safeguards provided by this subchapter are in addition to safeguards provided by other law or agency rules." Tex. Util. Code § 17.203(a). However, that provision is located in Subchapter E, which governs protecting consumers against utility service disconnection, and no such similar provision appears elsewhere in PURA. Further, Chapter 17 of PURA is intended to give the PUC authority to act to "protect retail customers from fraudulent, unfair, misleading, deceptive, or anticompetitive practices," which would seem to supplant the DTPA in the utility context. *Id.* § 17.001(b), *see generally id.* §§ 17.001-.203. From the language used in PURA as a whole, we conclude that the

---

[3] Isa argues that in the orders addressing appellees' motions for summary decision and motions to dismiss, the ALJ found that appellees had violated PUC Rule 25.22. *See* 16 Tex. Admin. Code § 25.22 (2018) (Pub. Util. Comm'n of Tex., Request for Service). However, the ALJ's orders determined that fact issues remained as to Ambit's knowledge of Isa's intended electrical use and CenterPoint's culpability and responsibility to Ambit, its customer; disagreed with CenterPoint's assertion that it was "categorically exempt" from Rule 25.22; and determined that Ambit had not complied with another PUC rule not relied on here by Isa. The ALJ did not make a finding that appellees had violated Rule 25.22, and instead stated that the record would not support summary decision of whether that rule was violated. Further, as stated earlier, Isa did not exhaust his administrative remedies.

legislature intended for Chapter 17 to govern in the face of a claim of deceptive trade practices by a utility or REP and that it did not intend that Chapter 17's general provisions governing consumer disputes unrelated to the disconnection of utility service could be supplemented by suits under other consumer protection statutes.

Because Chapter 17 provides the PUC with exclusive jurisdiction over a consumer's disputes with his electric utility or REP and provides the exclusive remedies available in such a dispute, *see id.* § 17.157; *Southwestern Bell*, 235 S.W.3d at 625-26, the PUC has exclusive jurisdiction over Isa's dispute with CenterPoint and Ambit.[4]  Isa may not attempt to sidestep the administrative process, a process that he did not exhaust, by this independent suit for damages not authorized under PURA.  *See Entergy*, 142 S.W.3d at 323.  We overrule Isa's complaints on appeal.

**Conclusion**

Isa did not exhaust his administrative remedies and may not now seek in the trial court further remedies related to his dispute with Ambit and CenterPoint.  The trial court properly dismissed his suit for want of jurisdiction.  We affirm the trial court's order of dismissal.

---

[4] Our conclusion is supported by the supreme court's opinion in *Chaparral Energy*, in which it approved of lower-court opinions holding that the PUC had exclusive jurisdiction over claims for breach of contract—one related to a billing dispute and the other to the delayed provision of services—and held, "We agree with these courts' construction and application of the scope of PURA's grant of exclusive jurisdiction to the PUC.  Chaparral's complaints arise from Oncor's alleged breach of the Service Agreement, in which Oncor agreed to 'provide additional electric facilities sufficient to provide electric service' for Chaparral's wells." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 140 (Tex. 2018); *see also id.* at 141 (PURA "section 17.157 further underscores that PURA has established a comprehensive regulatory scheme").

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   August 29, 2018

9