COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CELADON TRUCKING SERVICES, INC., | § | No. 08-07-00313-CV |
| | § | Appeal from |
| Appellant/Cross-Appellee, | § | |
| | | 384th District Court |
| v. | § | |
| | | of El Paso County, Texas |
| MARIO MARTINEZ, | § | |
| | | (TC # 2002-3447) |
| Appellee/Cross-Appellant. | § | |
| | § | |

**O P I N I O N**

Celadon Trucking Services, Inc. appeals from a judgment entered in favor of Mario Martinez. Because we conclude that the Indiana Workers' Compensation Board had exclusive jurisdiction of Martinez's claims, we reverse and render judgment dismissing his suit.

**FACTUAL SUMMARY**

Mario Martinez, who lives in El Paso, applied for a job as a truck driver with Celadon at its El Paso terminal.[1] Celadon is a trucking company with its headquarters in Indiana. After being hired, Martinez traveled to Indianapolis for orientation. Celadon paid for his trip and housed him in a dormitory during the three day orientation. While at orientation, Martinez signed an agreement with Celadon's subsidiary, Celadon Trucking Company of Indiana, Inc., entitled "Worker's Compensation Acknowledgement & Agreement" which provided that Martinez's employment was "principally localized in Indiana" and Indiana workers' compensation law would apply to the

---

[1] Celadon has other Texas facilities including Laredo and Waxahachie.

settlement of any claim arising out of any job related injury. Martinez does not read English and he did not understand the documents presented to him, but he did not ask anyone to translate the documents nor did he tell anyone he could not understand them. Martinez signed the documents because he needed the job. After orientation concluded, Celadon provided Martinez with a truck and he returned to El Paso. Martinez's designated route covered several Texas cities but he sometimes drove to other states.

In August 13, 2001, Martinez suffered on-the-job injuries to his back and leg as the result of a vehicular accident in Sweetwater, Texas. After he received emergency treatment, another Celadon truck driver who was passing through transported him home. Celadon is self-insured for workers' compensation purposes in Indiana but it is not a qualified self-insurer in Texas. Celadon's workers' compensation manager, Audrey Manning, called Martinez two days after the accident and told him that his claim would be handled under Indiana law pursuant to the agreement he had signed, he would receive benefit checks, Celadon would pay for his medical care, and Celadon had the right to direct his medical care. Manning also told him to go to the Eastside Medical Care Center in El Paso for initial treatment. Manning filed a report of injury that same day and forwarded it to Celadon's third-party claims administrator, JWF Specialty Company. Karen Salwowski, a JWF employee, handled Martinez's claim. On August 27, 2001, JWF filed a form entitled "Agreement to Compensation of Employee and Employer" with the Indiana Workers' Compensation Board reflecting Martinez would be compensated weekly at a certain amount while off work. The benefit checks were deposited directly into Martinez's bank account.

Martinez complied with Manning's instructions and initially received treatment at the Eastside Medical Clinic. The doctors' work status reports restricting Martinez from all work were forwarded to Manning. MRIs of the knee and back were performed on August 20, 2001 and

reflected that Martinez had a herniated disc in his lower back and joint effusion with early bursitis in the knee. Consequently, Martinez was referred to an El Paso orthopedic surgeon, Dr. Eric Sides, who restricted Martinez from all work. On August 27, 2001, Manning sent a six-page fax to Salwowski with the notation, "Mario is wanting surgery. We need to bring Mario to Indy. See Dr. Lorber." Manning explained that she wanted Martinez to get a second opinion in Indianapolis before he underwent surgery.

On October 4, 2001, Manning authorized Salwowski to hire a nurse practitioner, Beth Bader, to assist with Martinez's claim. Bader referred Martinez to Dr. Angelo Romagosa, who is a board certified in physical medical and rehabilitation and she asked Dr. Romagosa to provide detailed information about Martinez's medical condition and progress. On October 22, 2001, Dr. Romagosa provided a detailed report to Bader. He diagnosed Martinez with a lumbar strain, a herniated disc, aggravation of a facet joint in the lower back, and a knee injury. In his opinion, Martinez's prognosis for recovery was good. Dr. Romagosa stated it would be two to three months before he would be able to determine when Martinez could return to light duty. Because Martinez was experiencing severe spasms in his back and radicular pain, Martinez would not be able to return to light duty immediately, but Dr. Romagosa hoped that with treatment Martinez would be able to return to job as a truck driver in six months. Bader instructed Dr. Romagosa to take over Martinez's treatment and he proceeded to treat Martinez with corticosteroid injections in the knee and back as well as physical therapy. Dr. Romagosa also prescribed anti-inflammatory and pain medications. Manning received a copy of Dr. Romagosa's letter.

It is Celadon's policy to bring drivers to Indiana for light duty work when a light duty release is obtained. The policy has several purposes but the main reason is for medical treatment. On October 30, 2001, Salwowski instructed Bader to set up an appointment for Martinez to see Dr. John

Lomas at Methodist Occupation Health in Indianapolis. Salwowski also told Bader that she needed to get a light duty release for Martinez from Dr. Romagosa. On October 31, 2001, Bader called Dr. Romagosa's office and told the staff she needed return to work restrictions "now." Bader spoke with Dr. Romagosa about her request for Martinez to travel to Indiana but he did not believe it was a good idea due to Martinez's symptoms. Bader told Dr. Romagosa that Celadon was insisting on Martinez traveling to Indiana for further treatment. She also said that Martinez would continue to receive treatment only if he flew to Indiana. Bader instructed Dr. Romagosa to complete the Texas Workers' Compensation Work Status Report form which would serve as a prescription allowing Martinez to fly. Dr. Romagosa specifically told Bader that Martinez was not ready to return to light duty and he was only clearing Martinez to fly. With Bader's guidance, Dr. Romagosa completed the form writing in the section titled "other restrictions" that Martinez "may fly by plane." He left blank the section entitled "work status information" which would have indicated that Martinez's medical condition would allow him to return to work on a given date with the restrictions listed in Section III of the form, but he listed various work restrictions in Section III. Bader forwarded the form to Salwowski and Manning.

Although she had received a copy of Dr. Romagosa's October 22, 2001 letter, Manning interpreted the form as a light duty release and called Martinez on November 2, 2001 to inform him that Dr. Romagosa had released him to light duty. She told him that Celadon had a light duty position available in Indianapolis and if he did not accept the position, his benefits would be terminated. Martinez also spoke with Bader about the letter. She told him that if he did not go to Indiana, his benefits would be cut and his therapy would cease. Martinez went to Indianapolis on November 5, 2001 because he felt he had no choice.

Celadon housed Martinez in a large dormitory in a fenced compound. He spoke with

Manning and she represented to him that he had been released to light duty. When he asked to see the release, Manning refused to show it to him. At this point, Martinez began to suspect that Manning was lying to him. He saw Dr. Lomas the following day and was released to light duty. Manning put Martinez to work.

On January 10, 2002, Bader notified Manning and Salwowski that Martinez had been scheduled for a functional capacity evaluation. She expected Martinez to be placed at maximum medical improvement (MMI) and that he would be discharged from medical care. Martinez attended the functional capacity evaluation on January 11 and a report was sent to Dr. Lomas. When Martinez saw Dr. Lomas on January 15, Dr. Lomas concluded that Martinez's functional abilities were permanent and released him from care. Celadon terminated Martinez's employment the same date because he had been released from workers' compensation with permanent restrictions.

After receiving Dr. Lomas' written diagnosis that Martinez had a 7% permanent impairment, Salwowski prepared a settlement agreement entitled "Agreement to Compensation of Employee and Employer." The agreement is on Indiana state form 1043. According to the agreement, Martinez had a 7% PPI and he would be paid $9,100 in a lump sum upon approval of the Indiana Workers' Compensation Board. Martinez met with Manning and presented the agreement to him. She told him that he had reached maximum medical improvement and he did not need any more treatment. Manning told Martinez that if he did not sign the agreement, he would get nothing, but if he signed it, he would get the money and Celadon would send him home to his family. Martinez signed the documents and returned to his family the same day. The Indiana Workers' Compensation Board approved the agreement. Martinez was unable to continue with his therapy following his termination because he could not afford it.

Martinez filed suit against Celadon alleging non-subscriber negligence, wrongful termination,

and fraud.  The trial court granted partial summary judgment on all causes of action other than the fraud and wrongful termination.  A jury returned a verdict in favor of Martinez on the fraud claim and in favor of Celadon on the wrongful termination claim.  The jury awarded actual damages in the total amount of $354,362.50 and punitive damages in the amount of $5,000,000.  The trial court rendered judgment on the verdict with the exception of the punitive damages award which the court reduced to $3,000,000.  Both parties filed notice of appeal.

## SUBJECT MATTER JURISDICTION

We first address Issue Two because it challenges the trial court's subject matter jurisdiction. Celadon contends that the case should have been dismissed because the Indiana Workers' Compensation Board had exclusive jurisdiction over Martinez's claims and Martinez failed to exhaust his administrative remedies.  Alternatively, Celadon argues that Martinez did not exhaust his administrative remedies with the Texas Division of Workers' Compensation.  It is undisputed that Martinez did not present his tort claims before either the Indiana Board of Workers' Compensation or the Texas Division of Workers' Compensation.

We presume that district courts are authorized to resolve disputes unless the constitution or other law conveys exclusive jurisdiction on another court or administrative agency.  *In re Southwestern Bell Telephone Company, L.P.*, 235 S.W.3d 619, 624 (Tex. 2007); *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004).  An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.  *In re Southwestern Bell*, 235 S.W.3d at 624-25; *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).  Whether an agency has exclusive jurisdiction is a matter of law subject to de novo review.  *In re Southwestern Bell*, 235 S.W.3d at 625.  If an agency has exclusive jurisdiction to

resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction. *Id.*

*Indiana Workers' Compensation Board*

Celadon maintains that it proved as a matter of law that Indiana law applies in this case and the Indiana Workers' Compensation Board had exclusive jurisdiction of Martinez's tort claims pursuant to Indiana Code Section 22-3-4-12.1(a):

> The workers' compensation board, upon hearing a claim for benefits, has the exclusive jurisdiction to determine whether the employer, the employer's worker's compensation administrator, or the worker's compensation insurance carrier has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation.

IND.CODE § 22-3-4-12.1(a). This statute requires that a claimant first present his tort claims to the Indiana Workers' Compensation Board and obtain an adverse ruling before invoking the jurisdiction of the courts. *Sims v. United States Fidelity & Guaranty Company*, 782 N.E.2d 345, 350-51 (Ind. 2003).

As we have noted, Martinez signed an agreement which states that his employment is "principally localized in Indiana" and that Indiana workers' compensation law would apply to the settlement of any claim arising out of any job related injury. Section 406.073(a) of the Texas Labor Code expressly sanctions such an agreement: "An employee whose work requires regular travel between this state and at least one other jurisdiction may agree in writing with the employer on the principal location of the employment." TEX.LABOR CODE ANN. § 406.073(a)(Vernon 2006).

The agreement signed on December 2, 2001 was between Celadon's subsidiary, Celadon Trucking Services of Indiana, Inc., and Mario Martinez. Celadon's workers' compensation manager, Audrey Manning, signed the agreement on behalf of the subsidiary, and that company is identified in the agreement as Martinez's employer. Likewise, in the documents filed by JWF with the Indiana

Workers' Compensation Board, Martinez's employer is identified as Celadon Trucking Services of Indiana. Martinez filed suit against the parent company, Celadon Trucking Services, which he identified in his pleadings as his employer. It is undisputed that Martinez's claim was submitted to the Indiana Workers' Compensation Board and he accepted workers' compensation benefits paid to him for his on-the-job injury.

The jury found that Celadon committed fraud against Martinez by falsely representing that he had been released to light duty by his doctor. Martinez proceeded at trial on the theory that Celadon made this false representation to force him to travel to Indiana where Martinez could be seen by Celadon's doctors, be subjected to a premature functional capacity evaluation, and be terminated following settlement of his worker's compensation claim. Martinez's fraud allegations amount to an assertion of bad faith on the part of Celadon in adjusting or settling his claim for compensation. If the Indiana statute applies, it would require Martinez to have first presented his fraud claim to the Indiana Workers' Compensation Board and obtained an adverse ruling before filing suit in Texas. Martinez presents four arguments why the statute does not apply here.

First, he argues that Celadon has failed to raise any issue on appeal challenging the trial court's ruling that Indiana law does not apply. Celadon filed a motion requesting the application of Indiana law but the trial court denied it. This court denied Celadon's mandamus petition finding that Celadon had an adequate remedy by appeal. *In re Celadon Trucking Services, Inc.*, 162 S.W.3d 769 (Tex.App.--El Paso 2005, orig. proceeding). This Court expressly stated that the denial of mandamus relief should not be construed as a ruling on the merits of the choice of law issue presented by Celadon. Whether Indiana law applies is implicit in Celadon's contention that the Workers' Compensation Board has exclusive jurisdiction of Martinez's fraud claim. Finally, to the extent Martinez contends that Celadon waived the issue by failing to raise it on appeal, the argument

is without merit. A contention that the trial court lacked subject matter jurisdiction cannot be waived and can be raised for the first time on appeal. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008).

Second, Martinez relies on expert testimony to establish that the Indiana Workers' Compensation Board does not have jurisdiction over his claims. George Coriden, a licensed Indiana attorney who served on the Indiana Workers' Compensation Board for several years, testified that Indiana did not have jurisdiction over Martinez's injury. Coriden testified that jurisdiction is based upon the employee's residence and where the work is actually performed. In this case, Coriden viewed Martinez's contact with Indiana as minimal. Further, it was his opinion that the parties could not confer jurisdiction on the Indiana Workers' Compensation Board by agreement. Whether the Indiana Workers' Compensation Board has exclusive jurisdiction of Martinez's claims is a question of law subject to *de novo* review. We are not bound by the testimony of an expert witness on the subject but rather we are bound to apply the law. Martinez does not cite any Indiana authority prohibiting an agreement such as this one. While Coriden testified that Martinez is an employee in the state of Texas for workers' compensation purposes, Texas permits an employee to agree in writing with the employer on the principal location of the employment. TEX.LABOR CODE ANN. § 406.073(a).

Third, Martinez maintains that the Indiana Workers' Compensation Board's exclusive jurisdiction pursuant to Section 22-3-4-12.1(a) is triggered only "upon hearing a claim for benefits." Since the Board did not conduct a hearing relative to Martinez's claim, he reasons that the statute does not apply. Martinez does not direct us to any authority in support of his position that the "hearing" referred to in the statute means a hearing attended by the parties and their attorneys. The Indiana Workers' Compensation Act expressly provides for disputes to be resolved by a single member of the board in a summary proceeding. *See* IND.CODE § 22-3-4-6 (providing that the Board

shall hear the parties at issue, their representatives and witnesses, and shall determine the dispute in a summary manner); *Rork v. Szabo Foods,* 436 N.E.2d 64, 67 (Ind. 1982)(stating that workers' compensation claims are heard and determined by a single member of the Workers' Compensation Board; the approach "effectuates a desirable and pragmatic goal in the administration of the Worker's Compensation Act-the speedy disposition of claims"); *see also Davis v. Webster*, 136 Ind.App. 286, 198 N.E.2d 883, 290 (Ind.App. 1964)(the Industrial Board of Indiana is an administrative agency, not a court, and it prescribes its own procedures which are summary and informal in nature). The statute does not precisely define what constitutes a hearing but the Workers' Compensation Board certainly had before it Martinez's claim for benefits when it considered and approved the agreements submitted to it. Further, the statute itself contemplates that it would apply when a party settles his workers' compensation claim as it provides for exclusive jurisdiction over a claim of bad faith on the part of the employer in settling a claim for compensation. Finally, construing the statute in the manner suggested by Martinez would have inconsistent results. An employee who enters into a settlement of his workers' compensation claim could maintain a tort suit against his employer without first presenting the claim to the Workers' Compensation Board, but an employee whose benefits are determined by the Board following some contested proceeding would be required to first exhaust his administrative remedies. We fail to perceive any basis for treating the two classes of claimants differently.

Finally, Martinez contends that Celadon was not a party to any "claim for benefits" before the Indiana board because JWF initiated workers' compensation proceedings only in the name of the subsidiary, Celadon Trucking of Indiana. The Indiana Worker's Compensation Act contemplates that one worker may simultaneously have two employers. *GKN Co. v. Magness*, 744 N.E.2d 397, 402 (Ind. 2001). Further, a parent corporation and its subsidiaries are considered joint employers

of the corporation's, the parent's, or the subsidiaries' employees for purposes of Indiana Code Sections 22-3-2-6[2] and IC 22-3-3-31[3]. IND.CODE § 22-3-6-1(a). Thus, Celadon was a joint employer with Celadon Trucking of Indiana.

Martinez's petition alleges that Celadon committed fraud by falsely representing that his doctor had released him to light duty. This allegation states the type of claim which falls within the exclusive jurisdiction of the Indiana Workers' Compensation Board under Section 22-3-4-12.1(a). *Cf. Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind.Ct.App. 2001)(In the context of the denial of insurance claims, "a finding of bad faith requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will."). Consequently, we conclude Martinez was required to present his claims to the Indiana Workers' Compensation Board before filing suit. Because he failed to do so, the trial court did not have subject matter jurisdiction of this claim. We sustain Issue Two.

## THE NEGLIGENCE CAUSE OF ACTION

In his cross-point, Martinez asserts that the trial court erred by granting summary judgment on his negligence cause of action. Martinez asserted Celadon breached its duty to provide him with safe machinery and a safe place to work and the breach of these duties proximately caused the accident and his resulting injuries. More specifically, Martinez alleged Celadon provided him with a defective tire and rim on the vehicle, it failed to secure the tire and rim to the vehicle, it failed to inspect the tire and rim, it failed to warn Martinez that it had not adequately secured the tire and rim,

---

[2] Indiana Code 22-3-2-6 contains an exclusivity provision: "The rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5-2-6.1."

[3] Indiana Code 22-3-3-31 relates to the apportionment of an award when an employee is in the joint service of two or more employers.

it failed to perform preventive maintenance on the vehicle, and it failed to supervise the mechanics and maintenance personnel. Celadon filed a motion seeking both traditional and no evidence summary judgment on all of Martinez's causes of action including the negligence claim. *See* TEX.R.CIV.P. 166a(i).

When reviewing a no-evidence motion for summary judgment, we must disregard all contrary evidence and inferences, and review the evidence in the light most favorable to the non-movants. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 692 (Tex.App.--El Paso 2009, no pet.). Once the moving party specifically states the elements as to which there is no evidence, the burden shifts to the non-movants to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged. *Walker*, 296 S.W.3d at 692-93. If the non-movants produce more than a scintilla of evidence regarding the challenged element, a genuine issue of material fact is raised. *Id*. at 693. Less than a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion. *King Ranch, Inc.*, 118 S.W.3d at 751. However, when the evidence rises to a level that enables reasonable minds to differ in their conclusions, then more than a scintilla of evidence exists. *Id*. If the non-movants do not produce more than a scintilla of evidence to raise a genuine issue of material fact, the trial court "must" grant the motion. *Id.*; *Larned v. Gateway East, Inc.*, 186 S.W.3d 597, 601 (Tex.App.--El Paso 2006, no pet.); *see also* TEX.R.CIV.P. 166a(i).

A negligence cause of action has four elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages (4) proximately caused by the breach. *Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). An employer has a duty to use ordinary care in providing a safe workplace. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Aleman v. Ben E. Keith Company*, 227

S.W.3d 304, 310 (Tex.App.--Houston [1st Dist.] 2007, no pet.). An employer must furnish safe machinery and instrumentalities and provide adequate assistance under the circumstances for the performance of required work. *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 186 n.45 (Tex. 2004); *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995); *Aleman*, 227 S.W.3d at 311. An employee suing an employer for negligence bears the burden of presenting legally sufficient evidence that the employer required the employee to work "where a reasonably prudent employer would not have done so." *Werner*, 909 S.W.2d at 869. An employer, however, is not an insurer of its employees' safety. *Elwood*, 197 S.W.3d at 794; *Aleman*, 227 S.W.3d at 311.

Generally, courts will find sufficient proof of causation when lay testimony establishes a sequence of events that provides a strong, logically traceable connection between the event and the condition. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). Proof other than expert testimony will constitute some evidence of causation only when a layperson's general experience and common understanding would enable the layperson to determine from the evidence, with reasonable probability, the causal relationship between the event and the condition. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006). Expert testimony is required when an issue involves matters beyond jurors' common understanding. *Id.* Whether expert testimony is necessary to prove a matter or theory is a question of law. *Id.*

In his summary judgment response to this issue, Martinez relied solely on his deposition testimony in which he described the accident. Martinez testified that he heard a big "boom" and a wheel came off of the trailer. The steering wheel started to shake and the truck pulled to the right side of the road. Martinez could not control the truck and it struck signs along the road before hitting the pillars or "walls" of a bridge. Martinez's pleadings and summary judgment response assume that the wheel coming off of the truck is what caused him to lose control of the vehicle but he did not

present any evidence to support that allegation. Even assuming that the accident was caused by the wheel coming off of the truck, there is no evidence that it happened due either to a defect in the wheel or because it had not been properly secured to the vehicle. Further, there is no evidence that Celadon failed to inspect the vehicle, failed to perform preventive maintenance, or failed to warn Martinez that the tire had not been adequately secured. Consequently, there is no evidence that Celadon breached its duty to provide him with safe equipment or a safe workplace.

Nor did Martinez present any evidence that Celadon's alleged breach proximately caused his injuries. *See Aleman*, 227 S.W.3d at 311 (employee seeking damages from employer in negligence action for broken leg sustained when employee slipped and fell on ramp leading from his truck's trailer to the ground during a delivery produced no evidence, in opposition to no-evidence summary judgment motion, that employer's failure to properly maintain its trailers was the cause in fact of his injury; although employee testified that he slipped on the ramp because his feet were wet from water on the floor of trailer that leaked from refrigeration unit inside the trailer, such testimony was only evidence that failure to maintain trailer caused water to be present on trailer floor, not that such a failure caused his injury). The trial court did not err by granting summary judgment on this cause of action. We overrule Martinez's first cross-point.

*Dismissal or Abatement*

Having sustained Issue Two, it is unnecessary to address the remaining issues raised on appeal by either party. We must now determine whether Martinez's claims should have been dismissed or if abatement is the correct remedy. If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. *American Motorists Insurance Company v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001). On the other hand, if the impediment to jurisdiction could be removed, then the court may abate proceedings to allow a

reasonable opportunity for the jurisdictional problem to be cured. *Id.* The time for Martinez to pursue review of his claims by the Indiana Workers' Compensation Board has expired. Consequently, the impediment to jurisdiction cannot be removed. We therefore reverse the judgment of the trial court and render judgment dismissing Martinez's suit for lack of jurisdiction.

March 24, 2010

_____

GUADALUPE RIVERA, Justice

Before McClure, J., Rivera, J., and Guaderrama, Judge
McClure, J., not participating
Guaderrama, Judge, sitting by assignment