

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: | § | No. 08-22-00089-CV |
| DAVID EDWARD SAUCEDO II and MARIANA TERRAZAS SAUCEDO, Individually and on Behalf of I.S., a Minor Child, | § § § | AN ORIGINAL PROCEEDING |
| | § | IN MANDAMUS |
| Relators. | § | |

**O P I N I O N**

This mandamus action is brought in a medical negligence case. Relators David Edward

Saucedo II and Mariana Terrazas Saucedo, individually and on behalf of I.S., a minor child, sued

the El Paso Children's Hospital Corporation (EPCH), Roberto Canales, M.D., and Rodolfo Fierro-

Stevens, M.D. (collectively, the Real Parties in Interest). Relators' underlying suit brings a cause

of action of negligence, including further allegations of gross negligence and conscious

indifference, contending the Real Parties in Interest's conduct led to the wrongful death of their

three-year-old daughter, I.S. To their original petition, Relators attached and filed of public record,

multiple expert reports (the Exhibits) prepared by two different physicians—but one being a

member of EPCH's credentialing committee and member of its medical staff.

By a motion to strike affidavits, opinions, and testimony, the Real Parties in Interest sought relief against Relators' initial pleading for "improper disclosure of privileged communications." Specifically, the Real Parties in Interest contended Relators had circumvented the discovery process by engaging in a "back door" path around statutory privileges, leaving no opportunity to object to disclosure of confidential hospital committee communications revealed by the publicly filed reports. They asserted the medical peer review privilege applied both to the Exhibits themselves and to certain passages of various pleadings which had incorporated statements originating from those documents.

In two orders issued after extensive hearings, the trial court found: (1) the medical peer review privilege applied to multiple statements contained within the challenged reports and in parts of related pleadings (the Privilege Order); and (2) it struck filings and portions of other filings, and further ordered the clerk of the district court to withdraw and seal said filings from the court's records; and further ordered Relators to amend and redact the affected items remaining on file after such redactions (the Amended Redaction Order).

Relators initially brought a direct appeal against the trial court's two orders by means of a companion case filed prior to this mandamus proceeding. *See David Edward Saucedo II and Mariana Terrazas Saucedo, Individually and on Behalf of I.S., a Minor Child v. El Paso Children's Hospital Corporation, Roberto Canales, M.D., and Rodolfo Fierro-Stevens, M.D.*, No. 08-22-00047-CV (Tex. App.—El Paso April 24, 2023, no pet. h.). Weeks following that appeal, Relators filed this petition for writ of mandamus asserting the same arguments advanced against the trial court's two orders. We decide both on this same date.

2

First, as to the Privilege Order, we deny mandamus relief in part; and determine in part the trial court erred. As to a part of the Privilege Order, we conclude the trial court clearly abused its discretion as to a certain portion of the order, and Relators have no adequate remedy by appeal. Thus, as to that part of the order only, we conditionally grant the writ of mandamus; but we deny mandamus relief as to the remaining part of the order. Second, as to the Redaction Order, we conclude Relators have an adequate remedy by appeal against that order, by an interlocutory appeal in part, and by a direct appeal in part. Thus, on that basis, we deny mandamus relief.

## I. BACKGROUND

Because this case involves unadjudicated allegations, we limit our background to matters relevant solely to the mandamus dispute.

### A. The original lawsuit and objections raised against Relators' exhibits

Relators attached multiple expert reports to the original petition they filed and served on Real Parties in Interest. The petition asserts the Exhibits were included to meet statutory requirements imposed on health care liability claims.[1] But they were not intended to serve as disclosures required by the Texas Rules of Civil Procedure. The attachments included three reports of Bradley Peterson, M.D., each addressing conduct of the defendants, respectively. The attachments also included the affidavit of Thomas Mayes, M.D., interim Chair of the Department

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 ("In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed or a later date required under Section 74.353, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.").

of Pediatrics at EPCH, and a member of the hospital's Credentials Committee and its Medical Executive Committee.[2]

Once served with Relators' petition, the Real Parties in Interest answered by generally denying all claims and asserting several defenses. Dr. Canales also moved to strike the expert reports filed of public record asserting they contained privileged information protected from unauthorized disclosure by Texas law.[3] Specifically, Dr. Canales asserted that Dr. Mayes's affidavit described his opposition to Dr. Canales's application for privileges with EPCH, to include matters related to EPCH's credentialing process, and other information obtained through Dr. Mayes's position as a Department Chair and member of the hospital's Peer Review, Credentialing, and Executive Committee. Dr. Canales asserted that certain communications disclosed by Dr. Mayes—whether they be statements he made himself or were made by other persons—were extracted from deliberations of the hospital's committees regarding Dr. Canales's application for privileges. Dr. Canales also complained in his motion that Dr. Peterson's reports revealed that he had reviewed and incorporated Dr. Mayes's affidavit into his report and opinions, and thus, he had paraphrased statements originating from Dr. Mayes's affidavit.[4] Soon after filing, EPCH and Dr. Fierro-Stevens joined in Dr. Canales's motion to strike the attached exhibits.

---

[2] In their mandamus petition, Relators appear to include Dr. Peterson's curriculum vitae in their total count of the number of "expert report exhibits." As a result, they identify "five exhibits" as being included in the initial filing. We only reach a count of four expert reports filed initially.

[3] *See* TEX. OCC. CODE ANN. § 160.007(a)(pertaining to the confidentiality of each proceeding or record of a medical peer review committee).

[4] Because this mandamus action deals with privileged and confidential information, we refrain from stating in detail the statements contained in Dr. Mayes's affidavit and declaration, and Dr. Peterson's expert reports.

Addressing the objections, Relators filed a consolidated response. To it, Relators attached the same exhibits as were attached to the petition, along with a new unsworn declaration of Dr. Mayes. The new declaration thus raised the total count of challenged exhibits to five. In reply, the Real Parties in Interest objected to Dr. Mayes's unsworn declaration, similarly to objections made to the earlier reports. Additionally, their reply included an affidavit of Melissa Padilla-Rodriguez,[5] an administrative director of EPCH whose duties included assisting with the credentialing of professionals who were granted privileges of working with the hospital. Padilla-Rodriguez's affidavit also attached bylaws of the hospital generally and of its medical staff. Relators objected to the affidavit and its attachments, asserting several arguments including their assertion that it was not timely filed.

## B. Hearings on the joint motion and objections

The trial court dealt with the dispute over the expert reports in two phases. First, two hearings were held in March and August 2021. Those hearings centered on whether peer-review protected information had been disclosed without authorization. Specifically, the Real Parties in Interest argued that Dr. Mayes's affidavit disclosed deliberative communications and internal processes of the hospital's credentialing committee. They urged that Padilla-Rodriguez's affidavit established the membership of the committee, how it was formed, and its function and purpose. When arguing, they pointed out the portions of Dr. Mayes's affidavit that revealed peer-review information without authorization. The Real Parties in Interest also defended against the Relators' assertion that the peer-review privilege had been otherwise waived.

---

[5] In her affidavit, Rodriguez confirms her former name was "Melissa Padilla" and changed to "Rodriguez" after marrying. We refer to her as Padilla-Rodriguez.

In September 2021, at the beginning of a third hearing, the trial court noted its intent to rule that multiple statements within the challenged reports were privileged and confidential, and no party had otherwise waived the privilege. Before issuing its ruling, the trial court noted it would likely need to determine how best to remove privileged information from publicly filed records if such removal were deemed necessary. Ultimately, the parties agreed they would provide further briefing on how best to remedy the unusual circumstances given the court's stated concerns.

The second phase of hearings occurred between October 2021 and January 2022. After receiving further briefing and supplementary arguments, the trial court issued two orders. It titled the first one: "Order on [the Real Parties in Interest's] Motion to Strike Affidavits, Opinions, and Testimony" (the Privilege Order). This order identified specific portions of Dr. Mayes's affidavit, Dr. Mayes's unsworn declaration, and Dr. Peterson's reports, which the court determined had contained privileged and confidential information protected under § 160.007(a) of the Texas Occupations Code. In relevant part, the order stated:

> IT IS FURTHER ORDERED that [the Saucedos] will not be permitted to mention or use any of this information from Dr. Mayes or Dr. Peterson in the above-listed paragraphs in any future petitions or any other future pleadings, motions, or other filings because it is privileged and confidential for the reasons stated; and the information is not subject to subpoena or discovery and is not admissible as evidence in this civil judicial proceeding, as stated in section 160.007(e) of the Texas Occupations Code[.]

The second order was titled, "Amended Order on [the Real Parties in Interest's] Rule 59 Objection, Special Exceptions, and Supplemental Issues Relating to Peer Review Privilege" (the Amended Redaction Order), whereby the trial court ordered the removal, redaction, or amendment of portions of exhibits and other filings of record.[6]

---

[6] The Amended Redaction Order corrected a clerical error in the original Redaction Order signed on February 3, 2022. This is not an issue by either party and Appellants appeal from the Amended Order.

6

### C.   Filings in the appellate court

On March 4, 2022, Relators filed a notice of appeal with this Court challenging the trial court's two related orders pursuant to Texas Rules of Civil Procedure 76a(8). *See* TEX. R. APP. P. 76a(8) (addressing appeals of any order or portion of an order or judgment relating to sealing or unsealing of court records). Weeks later, on May 17, 2022, Relators followed their Rule 76a(8) appeal with this petition for writ of mandamus seeking relief against the same two orders. In both their direct appeal and this mandamus proceeding, Relators presented identical briefing advancing the same three issues against the trial court's two orders.[7] While these cases remained pending with this Court, we consolidated the proceedings for purposes of briefing, oral argument, and in our rendering of simultaneous decisions. *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex. 1998) (orig. proceeding) (per curiam) (instructing that when a court of appeals is confronted with an interlocutory appeal and a related mandamus proceeding it may consolidate the two proceedings and render a decision disposing of both simultaneously, thereby conserving judicial resources and resources of the parties as well); *see also In re Chevron U.S.A., Inc.*, 419 S.W.3d 341, 346 (Tex. App.—El Paso 2010, orig. proceeding). In this opinion, we address Relators' petition for writ of mandamus only.

## II.   STANDARD OF REVIEW

Mandamus relief is available provided relators meet the well-established mandamus standard. *In re Chevron U.S.A., Inc.*, 419 S.W.3d at 346. For such relief, relators must establish

---

[7] Rather than seek relief against the trial court as Respondent, Relators' mandamus petition asserts it is filed against Real Parties in Interest: the EPCH, Dr. Canales, and Dr. Fierro-Stevens. In seeking relief, however, Relators petition asks this Court to reverse and vacate the trial court's two orders.

two requirements: (1) a clear abuse of discretion by the trial court; and (2) they must establish they lack an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding); *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding) (describing that mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law).

As to the first prong, "[a] trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, "[t]he relator must establish that the trial court could reasonably have reached only one decision." *Id*. at 840. As to a review of a trial court's determination of the legal principles controlling its ruling, "[a] trial court has no discretion in determining what the law is or applying the law to the facts." *Id*. (internal quotation marks omitted). Thus, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Id*.

As to the second prong, it is further recognized that mandamus should not issue to correct "grievances that may be addressed by other remedies." *Id*. at 840. Consequently, "[m]andamus will not issue where there is 'a clear and adequate remedy at law, such as a normal appeal.'" *Id*.

### III. ISSUES PRESENTED FOR MANDAMUS RELIEF

Relators bring three issues challenging the trial court's two orders, framing the issues to address each prong of the mandamus standard. The first two issues contend the trial court abused its discretion as to each order respectively. First, Relators assert the trial court abused its discretion by issuing its Privilege Order finding the medical peer review privilege applied to portions of

8

Dr. Peterson's reports and to Dr. Mayes's affidavit.

Second, Relators assert the trial court abused its discretion in issuing the Amended Redaction Order requiring redaction of: (1) Relators' exhibits, and (2) the parties' motions, responses, and other court filings, which all paraphrase the challenged exhibits to some extent. As to the Redaction Order, Relators rely on rule 91 of the Texas Rules of Civil Procedure, addressing special exceptions, and also on limitations of the trial court's inherent authority. Relators assert the trial court abused its discretion in sealing the expert reports, and other related filings, when Real Parties in Interests had not yet filed a rule 76a motion nor had they followed that rule's substantiative or procedural requirements. Lastly, Relators further contend the trial court abused its discretion by ordering a withdrawal of the challenged reports, and related filings, from the court's records and public view.

The third issue challenges both orders. Addressing the second prong of the mandamus standard, Relators contend they lack an adequate remedy on appeal as to each order. They argue the trial court's orders overcompensate by significantly altering the parties' court filings and mistakenly applying a statutory privilege such as to affect Relators' ability to present their case, to conduct discovery, and to proceed to trial without wasting judicial resources. In short, they contend that mandamus relief is fully supported. Finally, Relators further assert the two orders caused reversible harm under rule 44.1(a) of the Texas Rules of Appellate Procedure.

Relative to each order, we address each issue in turn.

## IV.  THE PRIVILEGE ORDER

In Relators' first issue, they assert the Real Parties in Interest failed to meet their burden to prove the medical peer review privilege applied to Dr. Peterson's § 74.351 expert report

9

declarations and to Dr. Mayes's affidavit and declaration. Specifically, they argue the Real Parties in Interest failed to (1) provide a legally sufficient affidavit to prove privilege; and (2) tender any documents for in camera review. In responding, the Real Parties in Interest contend they timely submitted prima facie proof to support the applicability of the statutory privilege provided by § 160.007(a) of the Texas Occupations Code, and no tender of documents for an in camera inspection was otherwise required given that Relators had attached the challenged records to their original petition.

## A. The peer review privilege

At its core, Relators' challenge against the Privilege Order centers on communication and records of the hospital's medical peer review committee or other similarly covered body of its governing structure. The Texas Occupations Code defines a "medical peer review committee" or "professional review body" as:

> [A] committee of a health care entity, the governing board of a health care entity, or the medical staff of a health care entity, that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians, including evaluation of the performance of those functions specified by Section 85.204, Health and Safety Code. . . .

TEX. OCC. CODE ANN. § 151.002.

To a certain extent, the records of such committees are protected by Texas law. The Supreme Court of Texas has held that the provisions of Texas Occupations Code § 160.007 "expressly delineate and limit the circumstances under which the records of and communication to a peer review committee may be accessed." *Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 16 (Tex. 1996) (orig. proceeding) (interpreting pre-codification version of statute). By its general

10

structure, § 160.007's provisions generally protect certain communications from disclosure unless an exception applies. TEX. OCC. CODE ANN. § 160.007.

To begin, § 160.007(a) provides that, "[e]xcept as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged." *Id*. § 160.007(a). "Unless disclosure is required or authorized by law, a record or determination of or a communication to a medical peer review committee is not subject to subpoena or discovery and is not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee." *Id*. § 160.007(e). Yet, the statute further provides, that under certain circumstances, the information may not be confidential, and in such case, it would not be subject to a privilege. For example, the Supreme Court has held that "records made or maintained in the regular course of business by a hospital" are not covered by and not confidential under § 160.007. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 699-700 (Tex. 2015) (orig. proceeding). In this same manner, "section 160.007(b) provides a limited exception to confidentiality for proceedings, records, or communications that are relevant to an anticompetitive action." *Id*. at 700.

The Supreme Court has described that "[t]he peer review privilege is intended to extend far enough to foster candid internal discussions for the purpose of making improvements in the quality of care, but not so far as to permit the concealment of 'routinely accumulated information.'" *In re Living Ctrs. of Texas, Inc.*, 175 S.W.3d 253, 260 (Tex. 2005) (orig. proceeding); *Brooks*, 927 S.W.2d at 17 ("The overarching purpose of the statute is to foster a free, frank exchange among medical professionals about the professional competence of their peers."). Similarly, this Court

11

has previously noted the vitally important purpose of the privilege "is to promote the improvement of health care and treatment of patients through review, analysis, and evaluation of the work and procedures of medical entities and personnel who staff them." *In re Tollison*, 92 S.W.3d 632, 635 (Tex. App.—El Paso 2002, orig. proceeding). The Court thus noted, "the Legislature has balanced the competing policy considerations of ensuring confidentiality for effective peer review and allowing complete discovery of legal claims." *Id.*

Whether the privilege applies is a matter of statutory construction, which we review de novo. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d at 700–01. Because privileges are disfavored in the law, they are strictly construed as they "contravene the fundamental principle that the public . . . has a right to every man's evidence." *Jordan v. Ct. of Appeals for the Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 647 (Tex. 1985) (omission in original) (internal quotation marks omitted). We look to the plain language of the statute to determine the intent of the legislature and, if the statute is unambiguous, we apply the words according to their common meaning, while considering the objective of the law and the consequences of a particular construction. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

## B. Whether the trial court clearly abused its discretion

The trial court announced three findings at the hearing held on September 21, 2021. Relators concede the record supports the first finding, that is, that EPCH operates a medical peer review committee under the hospital's bylaws and governing structure. To that end, Relators agree the committee is authorized to evaluate the quality of medical and healthcare services provided by the hospital including the competence of physicians who provide patient care.

12

Relators, however, contest the trial court's second and third findings. The second finding concluded that Dr. Mayes communicated with the hospital's peer review committee and its members surrounding the qualifications of Dr. Canales and his suitability for credentialing. The third finding determined that neither the hospital nor its peer review committee waived the privilege in writing as required by law. As to these two findings, Relators contend the trial court abused its discretion as neither are supported by legally sufficient evidence.

Specifically, Relators assert the Real Parties in Interest failed to meet their initial burden to prove the privilege applies to Dr. Mayes's statements for several reasons: (1) because documents were not tendered to the trial court to conduct an in camera review, (2) because the affidavit attached in support to their motion to strike failed to trace statements to any privilege, and (3) because the privilege does not in fact extend to gratuitous statements. Real Parties in Interest counter by arguing they presented prima facie proof of the applicability of the privilege and Relators themselves failed to prove that an exception applied. To a great extent, we agree with the Real Parties in Interest; but we also see a need for clarification of the trial court's order to ensure that information discoverable from alternative sources is not otherwise protected by overly broad language included in the trial court's order.

The party seeking to avoid discovery, or to avoid use of alleged privileged statements, as is relevant here, has the burden to establish a prima facie case for the privilege by testimony or affidavit. *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding). Once that party presents a prima facie case for a privilege, the burden then shifts to the party seeking production or use of the privileged information, to prove that an exception to the privilege applies. *Id.* at 279–280.

13

In support of their arguments, the Real Parties in Interest relied on the affidavit of Melissa Padilla-Rodriguez, an administrative director of EPCH, who attached two sets of bylaws to her sworn statement: (1) the Amended and Restated Bylaws of EPCH effective October 1, 2016 (the EPCH Bylaws); and (2) the EPCH's Staff Bylaws, effective July 27, 2016 (the Medical Staff Bylaws). Padilla-Rodriguez attested she had personal knowledge of the hospital's physician credentialing process and of the bylaws she provided. In general, she described the hospital's governing structure and provided more specific information about events pertaining to the application for privileges of Dr. Canales.

Padilla-Rodriguez averred that EPCH operates under the supervision of a Board of Directors which adopted the EPCH Bylaws. Among its provisions, the EPCH Bylaws authorize standing committees and special committees to perform specific tasks. The EPCH Bylaws also empower the hospital's board of directors to appoint physicians and other healthcare related professionals to its medical staff (the Medical Staff). This provision affords such professionals a privilege to attend to patients of the hospital and to execute other responsibilities related to physician applications for hospital privileges. The EPCH Bylaws further authorize the Medical Staff to create a Medical Executive Committee (MEC) to conduct peer review and address discipline issues with the Medical Staff. Furthermore, the Medical Staff Bylaws obligate each department chief of the hospital to review physician applications for clinical privileges. A department chief makes recommendations to the Medical Staff Credentials Committee. Once such recommendation is made, the Credentials Committee next reviews the application and makes its recommendation to EPCH's Board of Directors. The Board then has final authority to appoint physicians to the hospital's Medical Staff.

The Medical Staff Bylaws contain provisions for confidentiality. A physician who exercises clinical privileges at EPCH agrees to be bound by such bylaws. The provision states as follows:

> Information obtained or prepared by any representative for the purpose of evaluating or improving the quality and efficiency of patient care, reducing morbidity and mortality, or contributing to teaching or clinical research, shall, to the fullest extent permitted by law, be confidential. Such information shall only be disseminated to the extent necessary for the purposes identified above or except as otherwise specifically authorized by law. Such confidentiality shall also extend to information provided by third parties.

Additionally, the Medical Staff Bylaws provide that "[t]he confidentiality and immunity provided by this Article shall apply to all information obtained or disclosures made in connection with this or any other health care facility or organization's activities concerning . . . Applications for appointments, Clinical Privileges, or specified services . . . [and] Other Hospital, committee, Department, or staff activities related to monitoring and maintaining quality and efficient patient care and appropriate professional conduct."

Padilla-Rodriguez attested that Dr. Canales applied to EPCH for hospital credentials and privileges on November 2, 2018. At that time, Dr. Mayes served as Chief of the Department of Pediatrics. Along with other department chiefs and Medical Staff leaders, Dr. Mayes also served on the MEC. Padilla-Rodriguez further described that Cindy Stout then served as the CEO of EPCH. Under the Medical Staff Bylaws, Stout served as an ex-officio member of all standing and special Medical Staff committees. Similarly, she served as a non-voting member of the MEC.

Padilla-Rodriguez further attested to being familiar with the medical peer review committee processes. She averred that Dr. Mayes had agreed to be bound to confidentiality provisions by holding clinical privileges at the hospital. Padilla-Rodriguez attended Medical Staff

15

meetings including those related to credentialing matters in general and in connection with the application of Dr. Canales. In her administrative capacity, she prepared and presented documents to Dr. Mayes relating to Dr. Canales's application. She particularly described:

> All of this was done as part of the normal processes of the Credentials Committee, including to facilitate the committee's decision-making process regarding Dr. Canales's application for hospital credentials and privileges. The processes involved in physician credentialing are not part of [the Hospital's] regular course of business but, instead, are specialized and confidential processes provided for in the Medical Staff Bylaws. Any information obtained or documents generated in this process are kept confidential and segregated from routine hospital records, such as patient medical records or patient billing records. At no time did any chair, vice chair, or secretary of the Credentials Committee, MEC, or Board waive in writing any peer-review or credentialing privilege or confidentiality applicable to Dr. Canales's application for hospital credentials and privileges.

### (1) Whether the peer-review privilege applied to the challenged statements

Before analyzing whether the Real Parties in Interest met their burden to present prima facie proof of the applicability of the peer-review privilege, we first address two preliminary arguments made by Relators.

### (a) The applicability of § 74.351 of the Texas Civil Practice & Remedies Code

First, Relators assert the trial court abused its discretion by rendering the Privilege Order to the extent it impacts the expert reports they submitted to support their health care liability claim. Relators argue these reports are governed by TEX. CIV. PRAC. & REM. CODE § 74.351(l) ("A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)."). Relying on § 74.351, Relators contend the Real Parties in Interest were obligated to prove the applicability of the peer-review privilege "within the four-corners of Peterson's § 74.351 report."

16

We reject this argument outright because the question before the trial court was not whether the expert report was adequate under § 74.351. Rather, the relevant question required Real Parties in Interest to prove, and the trial court to determine, whether the challenged documents disclosed privileged and confidential information that should be amended, redacted, or sealed. Based on the grounds presented by the motion to strike, the trial court was not yet asked to determine the adequacy of the expert reports pursuant to § 74.351. Rather, as relevant to the grounds pleaded, the trial court determined whether the Real Parties in Interest established the application of the medical peer review privilege such that the burden had shifted to Relators to establish whether an exception applied.

Second, Relators next contend the peer-review privilege does not apply to this type of expert report because Dr. Peterson had not yet been designated as a testifying expert, and his declarations were not admissible as evidence. In support, they cite to *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686 (Tex. 2015) (orig. proceeding). However, this case did not involve an expert report but a request for documents in a defamation suit. *Id.* at 695–96. There, the Supreme Court held the medical committee privilege did not apply to data and information under the anticompetitive exception to the medical peer review committee privilege. *Id.* at 718 (citing TEX. OCC. CODE ANN. § 160.007(b)). We conclude the holding of *In re Mem'l Hermann* is inapplicable here.

Here, the record shows the trial court determined that certain portions of Dr. Mayes's affidavit and declaration, and Dr. Peterson's declarations as well—which were both identified by the trial court's order—were protected by the medical peer review privilege. It then issued a separate order addressing how to remove the privileged information, redact it, or do both, and to

17

do the same as to other references made to such information in pleadings and other filed documents. Plainly, on this record, no finding or ruling was requested or made on the adequacy of the expert reports pursuant to the requirements imposed by § 74.351 of the Texas Civil Practice and Remedies Code. Thus, we conclude that § 74.351 was not applicable to any of the proceedings at issue here.

### (b) The trial court's determination of whether the challenged information fell outside the scope of protected information

Next, Relators argue the trial court applied the privilege too broadly to certain statements by Dr. Mayes's reports and declaration. They contend that much of the challenged communications involved hospital staff, CEO Stout, and Padilla-Rodriguez, who are all non-physicians. They claim that Mayes's declaration testified about certain "unethical behavior" of EPCH's staff, all occurring outside committee deliberations. Thus, they urge, these statements fell outside the scope of the peer-review privilege as certain communication was made outside of a five-person quorum required for conducting committee business. Relators suggest the Texas Occupations Code limits the peer review privilege to "physicians evaluating the qualification and conduct of other physicians." We disagree.

Medical peer review or professional review action is defined as "the evaluation of medical and health care services, including evaluation of the qualifications and professional conduct of professional health care practitioners and of patient care provided by those practitioners." TEX. OCC. CODE ANN. § 151.002(a)(7). Moreover, the statutory provision does not limit the privilege to physicians in that it covers "any communication made to a medical peer review committee." *Id*. § 160.007(a). The record established that CEO Stout, a non-physician, was included as a non-voting member of all medical staff committees pursuant to the Medical Staff

18

Bylaws. Moreover, as part of her administrative functions, Padilla-Rodriguez assisted the medical staff committee and CEO Stout with physician credentialing. Thus, she was also covered by the terms of the Occupations Code. *See id*. § 151.002(a)(8)(A). That Stout and Padilla-Rodriguez are not physicians does not negate the fact that communications were made to committee members about a pending application for hospital privileges.

Relators also contend that courts require a narrow interpretation of the peer-review privilege, asserting that not every conversation occurring while credentialing is ongoing is necessarily privileged and confidential. Again, we disagree.

Section 160.007(a) provides that "each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged." *Id.* § 160.007(a). Here, the record shows the challenged information, to a great extent and as more fully discussed below, derives directly from communication to and from Dr. Mayes and other committee members about Dr. Canales's credentialing process.

Relators next claim the Bylaws require a quorum of five-committee members for the privilege to apply. However, as Real Parties in Interest point out, only MEC meetings require a five-person quorum, not meetings on the credentialing process. Moreover, Dr. Mayes attested that the meetings and communication occurred during the credentialing process and not at the MEC stage of that process. Accordingly, the bylaws do not require "formal" meetings in the Credentials Committee stage for the privilege to apply, as they do for the application of the privilege in the MEC stage. Therefore, the privilege can apply to informal communications of that committee and its processes including those disclosed by Dr. Mayes.

19

At the outset, we conclude that Relators failed to establish preliminary grounds showing the challenged statements fell outside the scope of the peer-review privilege.

**(2)     Whether the Real Parties in Interest presented prima facie proof of the applicability of the peer-review privilege**

Relators put forth several arguments asserting the Real Parties in Interest failed to establish a prima facie case for the applicability of the medical peer review privilege. First, Relators argue the Real Parties in Interest failed to meet their initial burden because they did not tender any documents for the trial court to conduct an in camera review. However, the request before the trial court did not include a determination on whether any documents withheld from discovery contained privileged information. Rather, the Real Parties in Interest alleged the exhibits filed with the initial pleading contained information protected by the privilege. Under these circumstances, the challenged statements were already openly disclosed through Relators' public filing of the Exhibits. Real Parties in Interest assert that because of the "unusual posture" of this case, and because the Relators attached the privileged information to their petition, the information had already been made a part of the public record. As a result, the trial court was able to review the documents without necessity of an in camera review. We agree that no in camera review applied under these circumstances.

Next, Relators assert the Real Parties in Interest did not meet their initial burden of proof because Padilla-Rodriguez's affidavit did not trace any of the statements in Dr. Mayes's affidavit, or in his declaration, or in Dr. Peterson's declarations, as well, to any peer review committee proceeding. Within his affidavit, Dr. Mayes discussed two meetings, or conversations, which were both attended by the chair of the Credentials Committee. He described the discussions involved Dr. Canales's privileges application and why it should and should not be granted. He also disclosed

20

his own vote and recommendation regarding Dr. Canales's application for privileges along with the vote and recommendations of other committee members.

On this record, which includes the Exhibits, the EPCH Bylaws, the Medical Staff Bylaws, along with an affidavit explaining the credentialing process and hospital governing structure, we conclude the Real Parties in Interest established prima facie proof of the applicability of the medical peer review privilege to the challenged statements. The trial court heard argument during multiple hearings where the Real Parties in Interest pointed out the specific paragraphs containing privileged and confidential information. The trial court was able to review Padilla-Rodriguez's affidavit with the attached Bylaws, as compared with Dr. Mayes's affidavit and declaration, and from there determine whether privileged information had been disclosed.

In short, Relators assert Dr. Mayes's affidavit and declaration fail to reveal any privileged information on their face. Instead, they assert Dr. Mayes simply revealed personal observations he made as a member of the hospital's medical staff, and not as a member of its other committees. They urge he did not reveal the contents of any documents, records, or communications made to any peer review or credentialing committee. Relators also claim that the statements revealed were gratuitously made because they were informal conversations that occurred outside a formal meeting, with non-physicians involved at most.

The Real Parties in Interest counter they sought protection of information used and discussed during the peer review process only. Additionally, in Padilla-Rodriguez's affidavit, she attested that her preparation of documents, discussions with Dr. Mayes, and her attendance at meetings, were all part of the ordinary processes for the hospital's credentialing process.

We first note that Relators do not point us to any specific statements covered by the Privilege Order on which they disagree. Rather, they argue broadly against the trial court's findings in general. In conducting our review, however, we examined each and every statement—as referenced by the paragraph and sentence number of the challenged exhibit or pleading—which the trial court deemed privileged and confidential. On review, we note that a few of the sentences included in paragraphs deemed privileged as a whole included contextual information that did not necessarily reveal information strictly arising from credentialing or peer review activities. For example, some sentences revealed general information about hospital activities or policies, broad statements about the hospital's financial performance, and statements disclosing actions allegedly taken by Dr. Canales while on site. The experts' exhibits additionally disclosed opinions relevant to the factual allegations of the underlying case.

Standing alone, when viewed in isolation apart from the paragraphs as a whole, certain sentences within certain paragraphs appear as if they are free of any privileged or protected information—i.e., Exhibit 1 paragraph 79, Exhibit 2 paragraph 77, and Exhibit 5 paragraph 29, 30, and 32. But when viewed in full context of the surrounding sentences and with their adjacent paragraphs, which themselves reveal privileged information in multiple sentences, we see that the isolated statements merely provide context or set-up type statements for the privileged sentences. As a result, we cannot say Relators have shown the trial court could reasonably have reached only one decision as to each of the challenged sentences. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding). Rather, we agree the statements identified in the Privilege Order largely contain privileged and confidential information disclosing conversations

and activities related to the hospital's review of Dr. Canales's qualifications as part of its medical credentialing process.

This conclusion leads into Relators next argument that the trial court's Privilege Order is overly broad because it further orders that the protected statements cannot be disclosed in any future petitions or other pleadings, they are not subject to subpoena or discovery, and they cannot be admitted into evidence in the underlying case. Again, we note the Privilege Order is very specific as to which statements were deemed privileged and confidential, identifying each piece of information by sentence and paragraph. Thus, only certain lines of information expressly listed in the Privilege Order were deemed privileged and not subject to disclosure.

But the Privilege Order further states that Relators would not be permitted to mention or use any of the identified portions "in any future petitions or any other future pleadings, motions, or other filings[.]" To the extent of this forward-looking restriction, we are compelled to clarify the Privilege Order cannot be properly read as precluding Relators from arguing they obtained certain information from alternative sources outside the boundaries of the peer-review privilege. *See Brooks*, 927 S.W.2d at 18 ("The statute does not prohibit discovery from alternative sources."). We stress here that information simply cannot be discovered from a peer review committee, or its related activities, or from individuals included within the protections of § 160.007. *See id.* On the other hand, Relators would be permitted to obtain information if it could be established it came either from documents within the public domain or from business records in which the committee came into contact but were discovered through other avenues. *See id.* These are but two examples and not an exhaustive list. To be clear, information about hospital activities in general, or actions of Dr. Canales more specifically, may potentially be discoverable when such information derives

23

from a nonprivileged source; that is, only those communications made to or in the course of proceedings of a medical peer review committee, or by its members who are functioning in that context, is deemed confidential and protected from ordinary discovery efforts. *See id.*

On this record, we conclude the Exhibits and related records establish the challenged communications and observations disclosed by Dr. Mayes were part of or related to the hospital's peer review process. Such evidence was sufficient as prima facie proof that the challenged statements were entitled to protection by the claimed privilege. *See In re Christus Santa Rosa Healthcare Corp.*, 617 S.W.3d 586, 595 (Tex. App.—San Antonio 2020, orig. proceeding) (holding an email exchange between doctors was privileged communication under the medical peer review privilege and it was not required for the email to be sent to every member of the hospital's peer review committee to be considered privileged communication); *see also Brooks*, 927 S.W.2d at 19 ("The privilege from discovery under [§ 160.007] is not restricted to communications to a medical peer review committee *during the course of a specific investigation or an ongoing proceeding* (emphasis added))." Thus, we conclude the Real Parties in Interest met their initial burden of proof. Yet, to a certain extent, we also conclude that certain language included in the trial court's Privilege Order is nonetheless overly broad to the extent it could be construed as precluding the use of non-privileged evidence obtained from alternative sources not protected by law.

Before reaching those concerns, however, we next consider Relators' claim that certain exceptions applied.

24

### (3) Exceptions to the peer review privilege

Relators next contend that, even if the statements were initially protected by the medical peer review privilege, they otherwise established an exception applied.

### (a) Financial records and the regular course of business

Relators assert that regulations of the Department of Health Services of the state required the hospital to maintain and disclose certain records, and therefore, the information was not otherwise privileged. They assert that Dr. Mayes's affidavit and declaration included information regarding EPCH's financial condition. Relators refer to EPCH's website where it states it is a non-profit hospital that provides charity care and community benefits. They contend that EPCH is statutorily mandated to disclose its financial data to the Department of Health Services including gross revenue, admissions, assets, liabilities, and unreimbursed costs of subsidized health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 311.033. Additionally, Relators urge that the Department of Health Services is statutorily required to use said data to publish a publicly released Annual Report regarding "the amount of charity care, bad debt, and other uncompensated care hospitals provide[.]" *Id.* § 311.035. Relators argue that, from these report, the "logical inference[] is that EPCH was desperate for Canales' volume of patients and money." On this basis, they conclude the information disclosed falls within an exception to the peer-review privilege.

Our review of the record demonstrates, however, that Relators never presented this argument to the trial court. As a prerequisite to presenting a complaint for appellate review, the record must show the party sought a ruling from the trial court. *See* TEX. R. APP. P. 33.1(a). Even so, on this record, we cannot say a "logical inference" is established that otherwise links the complained of statements to a recognized exception to the peer-review privilege.

25

**(b) Waiver**

At the trial court, and on appeal, Relators did argue that the Real Parties in Interest waived the privilege because they filed the complained of affidavits and declarations and referred to them in their own court filings. The statute provides that:

> Unless disclosure is required or authorized by law, a record or determination of or a communication to a medical peer review committee is not subject to subpoena or discovery and is not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee.

Tex. Occ. Code Ann. § 160.007(e). The written waiver must be signed by the chair, vice chair, or secretary of the affected medical peer review committee. *Id.* A party "seeking access to privileged information must plead and prove waiver of the privilege." *Id.* § 160.007(g).

Here, Relators were the first to file reports and declarations with the privileged information included. But they contend the Real Parties in Interest then waived any applicable privilege because they voluntarily filed into the court records the same declarations and affidavit and incorporated statements into their motions. Relators maintain that requiring a written, signed waiver is a "nonsensical and absurd result on these peculiar, undisputed facts." Relators assert the Real Parties in Interest waived any privilege by intentionally disclosing the privileged information to third parties.

In her affidavit, administrator Padilla-Rodriguez attested that "[a]t no time did any chair, vice chair, or secretary of the Credentials Committee, MEC, or Board waive in writing any peer-review or credentialing privilege or confidentiality applicable to Dr. Canales's application . . . ." Moreover, Relators do not assert that there is a written waiver of the privilege. Rather, they urge that because of the specific facts of this case, a written waiver was not required. In support of their

26

argument, Relators maintain that all privileges are waivable. *See* TEX. R. EVID. 511(a). They cite a decision from our highest court finding the medical peer review privilege had been waived when documents were disclosed to a grand jury. *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) (orig. proceeding). In *Jordan*, the Supreme Court held that it was unclear how and by what means the grand jury came into possession of the documents but that "[i]t is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents." *Id.*

As Real Parties in Interest point out, however, *Jordan* was decided under a previous statute of the peer review privilege, which did not include a written waiver requirement. *See id.* at 646; *see also In re Rio Grande Reg'l Hosp.*, No. 13-11-00058-CV, 2011 WL 1844453, at *4 (Tex. App.—Corpus Christi Mar. 14, 2011, orig. proceeding) (mem. op.) ("[W]hile it is true that the general medical committee privilege found in the health and safety code may be waived by voluntary disclosure of the privileged documents, [citing *Jordan*], the peer review privilege explicitly requires a written waiver executed by the committee."). Furthermore, whether there was a written waiver was not an argument presented by the parties and thus it was not a question before the court. *Jordan*, 701 S.W.2d at 649.

Here, Relators provide no authority supporting their argument that a written waiver is not required. They attempt to argue that the ruling of *Jordan* was subsequently reaffirmed by the Supreme Court in *Mem'l Hosp.-The Woodlands v. McCown*, 927 S.W.2d 1, 10 (Tex. 1996) (orig. proceeding). However, *McCown* did not ask whether a defendant waived the privilege by voluntary disclosure but rather determined whether a business records exception applied. *Id.* On the other hand, the Real Parties in Interest do cite cases where courts have held the medical peer review

privilege can only be waived by the method stated in the statute. *See In re Christus Santa Rosa Healthcare Corp.*, 617 S.W.3d at 595-596 (holding a letter sent by the hospital's counsel—but not executed by the chair, vice chair, or secretary of the hospital's medical peer review committee—failed to meet the requirements of § 160.007(e)).

On this record, a finding of no waiver of the peer review privilege is supported by legally sufficient evidence. The trial court did not err nor clearly abuse its discretion in finding the medical peer review privilege applied to the challenged statements contained in the attached exhibits and related pleadings. Although we reach this conclusion, we otherwise conclude the Privilege Order included an overly broad phrase that requires clarification to avoid the application of the peer-review privilege to information discoverable from alternative sources unrelated to peer-review activities or functions. We address the required clarification in the conclusion below.

Accordingly, Relators' first issue is overruled in part as to the trial court's finding of information protected by the peer-review privilege and sustained in part as to overly broad language that unduly restricts the discovery *of* or the admissibility *of* information derived from alternative sources, though such would remain subject to further objections not yet considered or ruled upon by either the trial court or by this Court in this proceeding.

### C. Lack of an adequate remedy on appeal

Relators' third issue in part asserts they have no adequate remedy on appeal because the trial court's Privilege Order overcompensated by significantly altering the parties' court filings and mistakenly applying privilege, thereby affecting their ability to present their case, to conduct discovery, and to proceed to trial without wasting judicial resources. This argument addresses the second prong of the required mandamus standard.

Because we conclude that Relators failed to show the trial court abused its discretion in determining the medical peer review privilege applied, that is, that Relators failed to establish the first prong of the two-prong standard, it follows that we need not address their contention that they have no adequate remedy at law. *See Walker*, 827 S.W.2d at 840; *see also* TEX. R. APP. P. 47.1 (providing that a court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal).

We overrule in part Relators' third issue.

## V. THE AMENDED REDACTION ORDER

In a first subpart of the second issue and remaining part of the third issue, Relators challenge the trial court's Amended Redaction Order, which removed the expert reports, exhibits, and other filings from the court's records and sealed records or portions of records from public view. Because we conclude—in the companion case issued this same date—that direct appeal is available to address these issues, it follows that an adequate remedy is available to Relators. Thus, mandamus review is not available to address the first subpart of the second issue and remaining part of the third issue.

Additionally, in the second subpart of Relators' second issue, they assert the trial court abused its discretion in granting special exceptions. In the absence of extraordinary circumstances, mandamus relief is not available to supervise or correct rulings of a trial judge which are merely incidental to the normal trial process when there is an adequate remedy by appeal for their correction. *Grimm v. Garner*, 589 S.W.2d 955, 956 (Tex. 1979). A trial court's rulings on special exceptions are merely incidental in the normal trial process where an aggrieved party has a remedy by appeal to correct the incidental ruling, if incorrect. *Hill v. Lopez*, 858 S.W.2d 563, 565

29

(Tex. App.—Amarillo 1993, no writ). The cost or delay incurred by the trial and appellate process does not make the remedy by appeal inadequate. *Walker*, 827 S.W.2d at 842; *see also Hill*, 858 S.W.2d at 566 (finding mandamus not available for a trial court's sustaining of special exceptions and citing other cases where mandamus was not available for other trial court's sustaining of special exceptions). Because mandamus is an extraordinary writ that should only be issued when the trial court clearly abused its discretion and Relators have no adequate remedy by appeal, we conclude that mandamus relief is not available to address the trial court's ruling on special exceptions. *Walker*, 827 S.W.2d at 840.

For this reason, we deny Relators' request for mandamus relief as to the complaints raised against the Amended Redaction Order.

We overrule Relators' second issue in its entirety; and as well, we overrule the remaining part of the third issue.

## VI. CONCLUSION

Based on the record before us, we deny mandamus relief in its entirety as to Relator's complaints against the Amended Redaction Order. As to the Privilege Order, however, we conditionally grant mandamus relief in part to the extent we determine the order includes certain overly broad language. As to the penultimate paragraph of the Privilege Order, we direct the trial court to solely withdraw the phrase stating: "and the information is not subject to subpoena or discovery and is not admissible as evidence in this civil judicial proceeding, as stated in § 160.007(e) of the Texas Occupations Code." Once that phrase is withdrawn, we further direct the trial court to insert the following in its place: "Plaintiffs are not prohibited from discovering or potentially admitting into evidence information which is sought from or has been obtained from

alternative sources—but such information remains subject to further objection by any party—where the information is not related to a medical peer review committee, or other such body, or otherwise afforded protection under § 160.007(e) of the Texas Occupations Code." Lastly, we direct the trial court to sign the Privilege Order, as modified. As to all other extents, we deny mandamus relief against that order.

The writ will issue only if the trial court does not comply.

GINA M. PALAFOX, Justice

April 24, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

31